Michael MAGINN and Kimberly
Maginn, Appellants,

v.

NORWEST MORTGAGE, INC., Appellee.

No. 03–95–00485–CV.

Court of Appeals of Texas,
Austin.

March 20, 1996.

Rehearing Overruled April 24, 1996.

Howard J. Siegel, Kiester & Lockwood, L.L.P., Austin, for appellants.

Mitchel D. Savrick, Howmann, Werner & Taube, L.L.P., Austin, for appellee.

Before POWERS, ABOUSSIE and KIDD, JJ.

ABOUSSIE, Justice.

Appellants sued appellee for breach of written contract, breach of oral contract, promissory estoppel, violations of the Deceptive Trade Practices Act ("DTPA"), negligence, gross negligence, fraud, and negligent misrepresentation. The controversy arose when appellee ("Norwest") declined to offer appellants a mortgage loan. The trial court granted summary judgment against appellants on the DTPA claim, ruling that appellants were not "consumers" for purposes of the act. The trial court also granted summary judgment against appellants on the contract and tort claims, ruling that they were barred by the statute of frauds. Appellants non-suited their promissory estoppel claim and appeal the final judgment below. We will affirm the trial court's judgment in part and reverse and remand in part.

## BACKGROUND

Appellants applied for a mortgage loan from Norwest. In connection with their application, appellants provided Norwest with a variety of credit information. In conducting its credit check, on May 18, 1993, Norwest faxed a letter to appellants' real estate broker stating that appellants' credit report was acceptable and that "final loan approval is contingent upon" a number of factors. Appellants claim that Norwest informed them that the loan transaction, in an amount exceeding $100,000, would close by the end of June 1993. On June 23, 1993, Norwest advised appellants' real estate agent that it declined to provide a mortgage loan to appellants.

## DISCUSSION

The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Furthermore, when a trial court grants summary judgment without stating the grounds, the summary judgment will be affirmed on any meritorious theory set out in the motion. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

### DTPA Claims

In their third point of error, appellants contend that the trial court improperly granted summary judgment against their DTPA claims because they were in fact "consumers" for purposes of the act. Appellants allege that, under the DTPA, they were consumers of various banking services ancillary to the application for a Norwest mortgage loan.

To qualify as a consumer under the DTPA, a person must have sought or acquired goods or services by purchase or lease, and the goods or services must form the basis of the complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981). For purposes of the DTPA, a loan is not a good or service. *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174–75 (Tex.1980). Therefore, we are called upon to answer whether Norwest's actions in evaluating appellants' credit history and assisting in the closing of the home sale constitute "services" under the DTPA.

On a prior occasion, this Court has addressed the distinction between the objective of a transaction and actions merely incidental to that objective:

> All transactions involve human service to some extent, the cost of which is included in the price of the transaction. Arguably, then all services in any transaction are purchased "services" under the DTPA. Under this approach, any service involved in a ... loan transaction would give rise to DTPA consumer status even though the actual ... loan could not....

*First State Bank v. Keilman*, 851 S.W.2d 914, 929 (Tex.App.—Austin 1993, writ denied) (quoting *FDIC v. Munn*, 804 F.2d 860, 863–64 (5th Cir.1986)). This Court further noted that, "the key principle in determining consumer status is that the goods or services purchased must be an *objective* of the transaction, not merely incidental to it." *Keilman*, 851 S.W.2d at 929 (emphasis in the original).

To support their argument that Norwest's ancillary banking services constituted "services" for the purposes of the DTPA, appellants principally rely on *Herndon v. First Nat'l Bank*, 802 S.W.2d 396 (Tex.App.—Amarillo 1991, writ denied). In *Herndon*, the borrower claimed that he sought to acquire from the lender a variety of financial services. These services included financial advice on when and where to obtain financing, whether to abstain from borrowing, and how to structure various financial agreements of his business operations. The court held that the Bank's financial advice constituted services for purposes of the DTPA. *Id.* at 399.

*Herndon* is distinguishable from the instant case. Financial advice on when to borrow, whether to borrow, and how to structure financial arrangements of business operations is not typically incidental to the loan itself. Such financial advice constitutes an objective independent of the loan transaction. However, in the instant case, the end and aim of appellants' dealings with Norwest was to obtain a mortgage loan. Norwest's ancillary services served no purpose apart from facilitating a mortgage loan. Therefore, we conclude that any services provided by Norwest were, as a matter of law, incidental to the contemplated mortgage loan; they were not an objective of the transaction. As such, appellants were not consumers for purposes of the DTPA. We overrule point of error three.

### Contract Claims

In point of error one, appellants claim that the trial court erred in ruling that the statute of frauds bars their breach of contract claims. Section 26.02(b) of the Texas Business and Commerce Code (the "Code") provides:

> A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by the party's authorized representative.

Tex.Bus. & Com.Code Ann. § 26.02(b) (West Supp.1996). In support of their argument, appellants maintain that (1) there existed a written instrument evidencing a contract between Norwest and appellants to provide a mortgage loan; (2) the doctrine of promissory estoppel prevents Norwest from raising a statute of frauds defense; (3) Norwest failed to comply with § 26.02(e) of the Code, and thus § 26.02(f) bars it from raising a statute of frauds defense; and (4) Norwest failed to comply with § 26.02(g) of the Code and is thus barred from raising a statute of frauds defense.

### Written Memorandum Evidencing a Contract

■ Appellants argue that a letter from Paula Moss, an agent of Norwest, constituted a written instrument evidencing a contract between Norwest and appellants to provide a mortgage loan. Moss faxed the memorandum to appellants' real estate broker on May 18, 1993. The memorandum indicated that appellants had made a loan application, that their credit was acceptable, and that based on the information in the application, their income-to-debt ratio was in line with FHA guidelines to qualify for a thirty-year mortgage loan in the amount of $105,000. The latter statement was made contingent on various factors, including further credit verifications.

■ Whether a contract comes within the statute of frauds is a question of law. *Bratcher v. Dozier,* 162 Tex. 319, 346 S.W.2d 795, 796 (1961). The statute of frauds does not require that the contract itself be in writing. Instead, the written instrument merely furnishes written evidence of a contract and its essential terms. *EP Operating Co. v. MJC Energy Co.,* 883 S.W.2d 263, 267 (Tex.App.—Corpus Christi 1994, writ denied). The statute of frauds requires the written agreement or memorandum to be complete within itself in every material detail and to contain all of the essential elements of the agreement so that the contract can be ascertained from the writings without resort to oral testimony. *Cohen v. McCutchin,* 565 S.W.2d 230, 232 (Tex.1978).

The Moss memorandum contains neither a promise, an agreement, nor a commitment to loan appellants any money. The document merely states that appellants appear to have good credit, but that further credit inquiries must be undertaken. Having examined the "four corners" of the document, we conclude, as a matter of law, that the letter does not satisfy the statute of frauds.

### Promissory Estoppel

■ In claiming that Norwest is barred from raising a statute of frauds defense, appellants evoke the promissory estoppel doctrine as exemplified in *Cobb v. West Texas Microwave Co.,* 700 S.W.2d 615 (Tex. App.—Austin 1985, writ ref'd n.r.e.); *see also Nagle v. Nagle,* 633 S.W.2d 796, 800 (Tex. 1982). When a party makes an oral promise to sign a written instrument complying with the statute of frauds, the promise will be

enforced, provided the promisor should have expected that the promisee would detrimentally rely on such promise. *Cobb,* 700 S.W.2d at 616. Appellants contend that (1) Norwest orally promised to later execute a written instrument evidencing a contract to provide a mortgage loan, and (2) appellants relied on such promise.

In *Cobb,* the summary-judgment evidence suggested that there was a promise to reduce the oral agreement to a written instrument. *Id.* at 616. In the instant case, taken in the light most favorable to the nonmovant, the summary-judgment evidence suggests that Norwest orally agreed to close the mortgage deal near the end of June 1993. However, there is nothing in the summary-judgment evidence to suggest that Norwest orally agreed to reduce any such promise to a *written* agreement. Therefore, we hold that the doctrine of promissory estoppel does not defeat Norwest's statute of frauds defense.

*Section 26.02(e) & (f)*

 Section 26.02(e) of the Code requires that written loan agreements involving more than $50,000 contain a "merger" clause. *See* Tex.Bus. & Com.Code Ann. § 26.02(e) (West Supp.1996). Section 26.02(f) of the Code goes on to explain the consequences of failing to adhere to § 26.02(e). If the written loan agreement has no merger clause, then § 26.02 "does not apply to the loan agreement, but the validity and enforceability of the loan agreement and the rights and obligations of the parties are not impaired or affected." Tex.Bus. & Com.Code Ann. § 26.02(f) (West Supp.1996).

Appellant contends that Norwest did not comply with § 26.02(e) because it failed to include a merger clause. Therefore, appellants argue, § 26.02(f) removes the loan agreement from the requirements of the statute of frauds. We disagree. By its own terms, § 26.02(e) presupposes a written instrument. In the absence of a written agreement, any requirement of a merger clause is nonsensical; oral agreements cannot "merge" into a written document which does not exist.

 Section 26.02(f) must be read in conjunction with § 26.02(c) & (d) which prevent written agreements from being controverted by parol evidence. Tex.Bus. & Com.Code Ann. § 26.02(c)(d) (West Supp.1996). Examining the statute as a whole, we conclude that the penalty for failing to comply with § 26.02(e) is to allow the written contract to be controverted by parol evidence. We do not read § 26.02(f) as removing a loan agreement from the statute of frauds when there is no merger clause in a non-existent written document. *See Durish v. Channelview Bank,* 809 S.W.2d 273, 275 (Tex.App.—Austin 1991, writ denied) (statute should be construed as a whole and not through an examination of isolated provisions).

*Section 26.02(g)*

 Appellants argue that because Norwest failed to post notices as required by § 26.02(g), it is estopped from raising a statute of frauds defense. We disagree. Section 26.02(g) of the Code provides:

> All financial institutions shall conspicuously post notices that inform borrowers of the provisions of this section. The notices shall be located in such a manner and in places in the institutions so as to fully inform borrowers of the provisions of this section. The Finance Commission of Texas shall prescribe the language of the notice.

Tex.Bus. & Com.Code Ann. § 26.02(g) (West Supp.1996).

Unlike § 26.02(e) & (f), § 26.02(g) does not prescribe any penalty for failure to adhere to the statute. The Legislature chose to provide a penalty for the failure to comply with § 26.02(e), but it did not do so for the failure to comply with § 26.02(g). Hence, the Legislature recognized the issue of a penalty for failing to comply with certain provisions of the statute. Examining the statute in its entirety, we conclude that the Legislature did not intend to withhold the statute of frauds defense from financial institutions which failed to adhere to § 26.02(g).

For the foregoing reasons, we overrule appellants' first point of error.

### Tort Claims

 In point of error two, appellants claim that the trial court erred in ruling that

the statute of frauds bars their various tort claims. When tort claims have their nucleus in an alleged oral contract which is unenforceable under the statute of frauds, the statute of frauds bars the tort claims as well. *Collins v. Allied Pharmacy Management, Inc.*, 871 S.W.2d 929, 936 (Tex.App.—Houston [14th Dist.] 1994, no writ). Having found that appellants' tort claims had their nucleus in the previously held unenforceable oral contract, the trial court ruled the tort claims were barred as well.

Appellants argue that their tort claims do not derive from any alleged breach of contractual loan agreements by Norwest. Instead, appellants claim that Norwest has a duty to use reasonable care whenever it provides information to its customers or potential customers. Appellants maintain that Norwest breached its duty when it allegedly caused appellants to incur expenses in reliance on Norwest's representations that the loan deal would close in a few weeks.

More specifically, appellants contend that Norwest assured them that the loan transaction would close at the end of June 1993. Furthermore, appellants contend that as a result of Norwest's representations, they gave notice to their landlord to vacate their apartment on June 30, 1993. Appellants concede that they were able to secure financing for their home purchase shortly after Norwest declined to provide them with a mortgage loan. However, appellants insist they incurred additional rental expenses and lost wages due to the delay in purchasing their new home which appellants contend was the result of Norwest's misrepresentations.

The summary judgment evidence, viewed most favorably to the nonmovant, suggests that (1) Norwest represented to appellants that they would receive a mortgage loan by June 23, 1993; (2) Norwest did not provide appellants with a mortgage loan; and (3) appellants incurred additional rental and lost wage expenses resulting from the delay in purchasing their new home caused by Norwest's misrepresentations.

The instant case is remarkably similar to *Federal Land Bank v. Sloane*, 825 S.W.2d 439 (Tex.1991). In *Sloane*, a jury found that the bank had represented to Sloane that it would loan him money to renovate his farm. Relying on this representation, Sloane incurred expenses upgrading his chicken coops. Eventually, the bank declined to loan Sloane the money. When Sloane sued the bank on a negligent misrepresentation theory, the bank argued that the statute of frauds barred the action because the grievance arose out of a contract dispute. The court disagreed, noting:

> The Sloanes do not claim that the bank agreed to loan them money and then breached that agreement; rather, they claim that the bank did not agree to loan them money, yet negligently misrepresented that it had made such an agreement. . . . Although a claim of negligent misrepresentation may not be used to circumvent the statute of frauds, under the circumstances of this case, the Sloane's claim does not fall within the statute of frauds.

*Id.* at 442.

Appellants' *tort* claims are nearly identical to those in *Sloane*. Irrespective of their contract claims, appellants' alternative tort claims do not allege that Norwest contracted to loan them money and then breached that contract. Instead, appellants allege that Norwest never did agree to loan them money, but negligently misrepresented that it would. Because we find *Sloane* to be controlling, we sustain appellants' second point of error.

**CONCLUSION**

Having overruled appellants' first and third points of error, we affirm the trial court's judgment with respect to the DTPA and contract claims. Insofar as we sustain appellants' second point of error, we reverse the trial court's judgment with respect to appellants' tort claims and remand the cause to the court below for proceedings not inconsistent with this opinion. The remainder of the judgment is affirmed.