TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00474-CV






Calvin Taylor and Margaret Taylor, Appellants



v.



First State Bank of Smithville, Texas, and Yerger Hill, III, Individually and as Attorney,


Officer and Director of the First State Bank of Smithville, Texas, Appellees






FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT


NO. 20,100, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING







 Calvin Taylor and Margaret Taylor appeal the take-nothing summary judgment
rendered against their claims against First State Bank of Smithville, Texas and Yerger Hill, III,
individually and as attorney, officer, and director of First State Bank of Smithville, Texas. We
will affirm the judgment.


BACKGROUND


 This case has its roots in a loan by the Bank to Calvin Taylor. Repayment was due
on November 27, 1988. The note fell into default, and the Bank sued Calvin for the balance due
on April 26, 1991. The case had two judgments rendered that were withdrawn before the final
judgment under review here. The activities leading to the two withdrawn judgments form part of
the basis of the Taylors' appeal.

 The first judgment was rendered in July 1992. The parties negotiated the dispute
and discussed settling the case by having the Taylors execute a new note secured by the Taylors'
shares of common stock in Medical Sciences, Inc. ("MSI"); the Taylors were the majority
shareholders in MSI. Hill as the Bank's attorney presented an agreed judgment setting up a
payment schedule and declaring that 75,000 MSI shares would be placed in escrow to secure the
loan. Hill signed the judgment both on his own behalf and on behalf of Calvin's attorney. Calvin
filed a motion for new trial, asserting that the purported "agreed" judgment actually violated the
parties' agreement. He alleged that the actual agreement was that no judgment would be rendered
provided Calvin made the scheduled payments and that Calvin would be allowed to set the number
of shares in escrow (and had not designated 75,000). Though Hill said he thought the agreed
judgment was authorized, he consented to the new trial on learning of Calvin's opposition.

 In September 1992, the trial court granted the motion for new trial, only to render
judgment against Calvin less than a week later using the language of a default judgment. Calvin
moved for a new trial as to this judgment on grounds that the evidence was insufficient to show
proper notice, the damages, or the attorney's fees. The appellees, meanwhile, sought an order
requiring Southwest Securities, Inc. to turn 100,000 of Calvin's shares of MSI common stock over
to the district clerk to be held in the registry of the court. The application for turnover was
supported by Hill's affidavit swearing that he had verified that Calvin had sold shares to other
creditors to satisfy other debts.

 Calvin sought withdrawal of the second judgment and the turnover order. He
alleged that Hill had not tried to verify his sales of stock and that Calvin had not in fact made such
sales. At the hearing held on December 14, 1992 regarding Calvin's motions, Hill testified that,
as Calvin's banker, he was familiar with Calvin's financial situation and was concerned by the
drawn-out nature of this lawsuit and the existence of other judgments against the Taylors. A
person from whom Hill said he got information regarding Calvin's financial situation submitted
an affidavit denying he gave that information to Hill. After the admission of this affidavit, the
parties conferred and announced a Rule 11 agreement to settle their disputes. The Bank agreed
to file a motion to dismiss its suit. Calvin agreed to execute a new note with the Bank using
200,000 of Calvin's MSI stock that was then restricted from sale by the company; according to
Calvin, the restriction was in place while the company had its product tested. Hill announced the
stock would be pledged "with the intent to see if we can get a 144 letter to lift the restriction off
of those shares so they can be sold." Calvin later testified that he understood this to mean that Hill
would and could get the restriction lifted. Calvin's attorney agreed with Calvin's interpretation
of Hill's representation, but believed Hill's statement was brash and unreliable. The trial court
granted the new trial and set aside the turnover order by an order signed December 29, 1992.

 It is unclear how much of the Rule 11 agreement was implemented. There is no
motion to dismiss by the Bank in the record until much later, and there is no indication that the
Bank or Hill tried to get the sale restriction lifted. The restriction was not lifted until March 1993,
when Calvin's attorney notified the broker of the agreement; by then, Calvin contends, MSI stock
was nearly worthless because of problems in the company and the industry. The Taylors contend
this was disastrous for them because the sale of MSI stock was their primary potential income
source.

 Without stock sales, the Taylors were unable to pay the Bank or other creditors and
sought bankruptcy protection. In a default proceeding, the bankruptcy court sustained the Taylors'
objection to the Bank's claim on the Taylors' assets. The bankruptcy court approved the Taylors'
reorganization plan and later remanded this action to the state district court. The Taylors filed a
counterclaim and third-party plaintiffs' original petition alleging wrongdoing by Hill in his actions
surrounding this suit.

 The appellees filed a motion for summary judgment. After the court announced it
would grant the motion, the Bank dismissed its claims against the Taylors. The court then signed
the summary judgment that the Taylors take nothing by their claims.


DISCUSSION


 The Taylors claimed damages from violations of the Deceptive Trade Practices Act,
economic duress, breach of the obligation of good faith and fair dealing, fraud, wrongful turnover
order, and intentional and negligent infliction of emotional distress. Appellees obtained a
summary judgment against all of these claims.

 We note three problems with the Taylors' brief. First, Margaret did not sign it. 
Calvin is not an attorney and cannot represent her; technically, she thus has failed to file a brief
and we could dismiss her appeal for want of prosecution. Second, the brief lacks any references
to where the record shows the trial court's error--a failure to follow Texas Rule of Appellate
Procedure 38.1(h) and grounds for overruling the point of error. Finally, and most significantly,
the Taylors violate Rule 38.1(h) by failing to address the defensive grounds for the summary
judgment, i.e., res judicata, collateral estoppel, limitations, and accord and satisfaction. The
summary judgment does not specify on which of the appellees' nineteen grounds it is based. 
Though the Taylors' point of error is broad enough to include these defenses (see Malooly Bros.,
Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970)), the Taylors waived their challenge to the
defensive bases for the summary judgment by not arguing against them. See Keever v. Finlan, 988
S.W.2d 300, 314 (Tex. App.--Dallas 1999, pet. filed) (applying the interpretation of Rule 38's
precursor, former Texas Rule of Appellate Procedure 74, found in Trenhom v. Ratcliff, 646
S.W.2d 927, 934 (Tex. 1983)). The summary judgment could stand against all the Taylors'
claims on these unargued grounds. See Malooly Bros., 461 S.W.2d at 121. Nevertheless, we
will, in the interest of justice, address the merits of the brief as if both Taylors had signed it, made
record references, and argued all bases.

 The appellees' motion for summary judgment uses both approaches to summary
judgment. The traditional type requires the movant to show that, with regard to at least one
element of every cause of action, no genuine issue of material fact exists and the movant is entitled
to judgment as a matter of law. Tex. R. Civ. P. 166a(c). The type of summary judgment
relatively new to Texas practice is prompted by a no-evidence motion. See id. 166a(i). If a
movant alleges that no evidence supports one or more essential elements of a cause of action, the
trial court must grant the motion unless the nonmovant produces summary-judgment evidence
raising a genuine issue of material fact. Id. In reviewing both types of summary judgments, we
take all evidence and inferences favoring the nonmovant as true and decide whether the judgment
is nevertheless appropriate. See Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548, 549
(Tex. 1985); see also Isbell v. Ryan, 983 S.W.2d 335, 338 (Tex. App.--Houston [14th Dist.]
1998, no pet.) (no-evidence motion).



DTPA

 Appellees asserted that the Taylors could not recover under the DTPA because they
were not "consumers" under the DTPA. See Tex. Bus. & Com. Code Ann. § 17.45(4) (West
1987). To be a consumer under the DTPA, a person must seek or acquire goods or services by
purchase or lease, and the goods or services must form the basis of the complaint; for purposes
of the DTPA, a loan is not a good or service. Maginn v. Norwest Mortg., Inc., 919 S.W.2d 164,
166 (Tex. App.--Austin 1996, no writ). Though the Taylors purchased a tractor with the
proceeds of the loan, the tractor is not the basis of the complaint. We will affirm the judgment
against the Taylors on this claim.


Economic Duress

 Appellees contended that there was no evidence they used economic duress against
the Taylors. Economic duress requires particular conduct by the defendant:

 

There can be no duress unless [1] there is a threat to do some act which the party
threatening has no legal right to do. [2] Such threat must be of such character as
to destroy the free agency of the party to whom it is directed. It must overcome
his will and cause him to do that which he would not otherwise do, and which he
was not legally bound to do. [3] The restraint caused by such threat must be
imminent. [4] It must be such that the person to whom it is directed has no present
means of protection.


* * *



[5] Where a demand made is wrongful or unlawful, and it is necessary for the party
making such demand to resort to the courts to enforce same, there is no duress, for
the one upon whom demand is made has adequate means of protection, and there
is no imminent restraint . . . . [6] But where the party making such demand has,
or is supposed to have, the power to injure the business or property interests of the
one upon whom such demand is made, without resort to the courts to enforce the
demand, and threatens to do an act which would cause such injury, and which he
has no right to do, and thereby induces a compliance with his demand, [7] against
the will of such party through fear of injury to his business or property interests,
such threats amount to duress, [8] if it appears that the party making such demand
and threat ought not in good conscience to retain the benefit received by reason
thereof.



State Nat'l Bank v. Farah Mfg. Co., 678 S.W.2d 661, 684 (Tex. App.--El Paso 1984, writ dism'd
by agr.) (quoting Dale v. Simon, 267 S.W. 467, 470 (Tex. Comm'n App.1924, judgm't adopted)). 
In response, the Taylors identified the agreed judgment, turnover, consequent freezing of their
stock, and the Rule 11 agreement as wrongful actions taken by appellees. These are either
extrajudicial actions that the appellees promised to take and did not, or judicial actions the
appellees took. None is a threatened action outside the court system that induced the Taylors to
take an undesired action. The Taylors have not stated a claim for economic duress as defined
above. We will affirm the judgment against the Taylors on this claim.


Good faith and fair dealing

 The appellees argued that they owed no duty of good faith and fair dealing to the
Taylors. Such a duty arises only if created by express contractual language or if a "special
relationship" exists between the parties. Arnold v. National County Mut. Fire Ins. Co., 725
S.W.2d 165, 167 (Tex. 1987). The Taylors argue that the first two judgments and the turnover
order created "a fiduciary or implied duty on Movants to act with dispatch to [undo] their unjust
and illegal control" of the Taylors' stock. The appellees' duties were defined by their agreement
with the Taylors. There is no proof or allegation of any contractual language creating such a
relationship, nor is there proof or authority supporting the Taylors' position. We will affirm the
judgment against the Taylors on this claim.

Fraud

 The appellees contended that there was no evidence of any of the elements of fraud. 
Fraud requires a material misrepresentation, which was false, and which was either known to be
false when made or was asserted without knowledge of its truth, which was intended to be acted
upon, which was relied upon, and which caused injury. Sears, Roebuck & Co. v. Meadows, 877
S.W.2d 281, 282 (Tex. 1994). While a party's intent is determined at the time the party made the
representation, it may be inferred from the party's subsequent acts after the representation is made. 
Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986). "Failure to perform,
standing alone, is no evidence of the promisor's intent not to perform when the promise was made. 
However, that fact is a circumstance to be considered with other facts to establish intent." Id. at
435 (quoted in Schindler v. Austwell Farmers Co-op., 841 S.W.2d 853, 854 (Tex. 1992). 

 We find no evidence of key elements of the claim of fraud in gaining the now-reversed agreed judgment and turnover order that initiated the freeze of the Taylors' stock. There
is no evidence that Hill knew the Taylors did not agree to the judgment and accompanying
turnover order; the evidence is that Hill said he thought there was an agreement and, when told
there was not, he consented to having those orders withdrawn. More important, there is no
evidence that Hill represented to the court that there was an agreement intending that the Taylors
rely on the representations. 

 We find no evidence on key elements of the claim of fraud surrounding the Rule
11 agreement. There is evidence that, when working out the Rule 11 agreement, Hill told the
Taylors' lawyer that he knew how to get the hold on trading MSI stock lifted and that, when
announcing the Rule 11 agreement in the trial court, Hill told the trial court that he would see what
he could do to get the hold lifted. Calvin averred that he understood that "Mr. Hill represented
that he and the bank would obtain the lifting of those restrictions and would immediately notify
my stock broker so that I might immediately engage in the sale of my stock" which was, at the
time, his only significant source of potential income. Apparently, Hill did not notify the
broker--the broker learned of the lifting in March 1993 from the Taylors' attorney. Calvin avers
that in the interim they lost chances to sell their stock and that, by March, the stock value had
eroded to near worthlessness because of "[p]roblems within the company and the market." There
is no evidence that, when Hill asserted he would try to get the hold lifted, he did not intend to do
so. Even if circumstances could support an inference of fraudulent intent, there is no evidence that
the Taylors relied on Hill's representations; rather, the Taylors' former attorney, testified without
contradiction in his deposition, "I didn't rely on it." We will affirm the judgment against the
Taylors on this claim.


Wrongful turnover order

 The appellees contended that there is no cause of action for damages for a wrongful
turnover order. The Taylors' only response is that the trial court clearly considered the turnover
order wrongful because it set the order aside because of notice problems. The court signed the
order, not the appellees; the trial court's setting aside the order remedied any wrongfulness in the
order. If the appellees abused the court's procedures, sanctions were available as a remedy. The
Taylors sought sanctions, but the court declined to award them. We will affirm the judgment
against the Taylors on this claim.


Intentional infliction of emotional distress

 The appellees argued that no evidence supported any of the elements of intentional
infliction of emotional distress. The elements include the following: 1) the defendant acted
intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the
defendant caused the plaintiff emotional distress, and 4) the emotional distress suffered by the
plaintiff was severe. Twyman v. Twyman, 855 S.W.2d 619, 621-22 (Tex. 1993). Liability has
been found only "where the conduct has been so outrageous in character, and so extreme in
degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and
utterly intolerable in a civilized community." Diamond Shamrock Ref. & Mktg. Co. v. Mendez,
844 S.W.2d 198, 202 (Tex. 1992). The supreme court has found, as a matter of law, a lack of
such outrageousness when Diamond Shamrock fired an employee and portrayed him publicly as
a thief; the supreme court wrote, "We need not condone or agree with Diamond Shamrock's
actions to conclude that, as a matter of law, they fall short of being 'beyond all possible bounds
of decency,' 'atrocious,' and 'utterly intolerable in a civilized community.'" Id. The Taylors find
outrageous the appellees' conduct in seeking the agreed judgments, which were not agreed, and
in promising to seek the lifting of the stock-trading freeze the Rule 11 agreement, and not doing
so. As the supreme court did in Mendez, we conclude as a matter of law that the appellees'
conduct described by the Taylors does not meet the extremely high standard of outrageousness. 
We will affirm the judgment against the Taylors on this claim.



Negligent infliction of emotional distress

 The appellees correctly pointed out that there is no independent cause of action for
negligent infliction of emotional distress. See Boyles v. Kerr, 855 S.W.2d 593, 595-96 (Tex.
1993). The Taylors correctly pointed out that they can recover damages for mental anguish
resulting from some other tort. See id. at 597. Having found no other torts on which the Taylors
can recover, we will affirm the judgment against the Taylors on this claim.


CONCLUSION


 We overrule the Taylors' point of error and affirm the take-nothing summary
judgment rendered against the Taylors' claims.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: August 26, 1999

Do Not Publish



 would immediately notify
my stock broker so that I might immediately engage in the sale of my stock" which was, at the
time, his only significant source of potential income. Apparently, Hill did not notify the
broker--the broker learned of the lifting in March 1993 from the Taylors' attorney. Calvin avers
that in the interim they lost chances to sell their stock and that, by March, the stock value had
eroded to near worthlessness because of "[p]roblems within the company and the market." There
is no evidence that, when Hill asserted he would try to get the hold lifted, he did not intend to do
so. Even if circumstances could support an inference of fraudulent intent, there is no evidence that
the Taylors relied on Hill's representations; rather, the Taylors' former attorney, testified without
contradiction in his deposition, "I didn't rely on it." We will affirm the judgment against the
Taylors on this claim.


Wrongful turnover order

 The appellees contended that there is no cause of action for damages for a wrongful
turnover order. The Taylors' only response is that the trial court clearly considered the turnover
order wrongful because it set the order aside because of notice problems. The court signed the
order, not the appellees; the trial court's setting aside the order remedied any wrongfulness in the
order. If the appellees abused the court's procedures, sanctions were available as a remedy. The
Taylors sought sanctions, but the court declined to award them. We will affirm the judgment
against the Taylors on this claim.


Intentional infliction of emotional distress

 The appellees argued that no evidence supported any of the elements of intentional
infliction of emotional distress. The elements include the following: 1) the defendant acted
intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the
defendant caused the plaintiff emotional distress, and 4) the emotional distress suffered by the
plaintiff was severe. Twyman v. Twyman, 855 S.W.2d 619, 621-22 (Tex. 1993). Liability has
been found only "where the conduct has been so outrageous in character, and so extreme in
degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and
utterly intolerable in a civilized community." Diamond Shamrock Ref. & Mktg. Co. v. Mendez,
844 S.W.2d 198, 202 (Tex. 1992). The supreme court has found, as a matter of law, a lack of
such outrageousness when Diamond Shamrock fired an employee and portra