**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 02-50686
(Summary Calendar)

_____

DAVID FOSTER,

Plaintiff-Appellant,

versus

BANK ONE TEXAS N.A.; THOMAS NEVILLE,

Defendants-Appellees.

Appeal from the United States District Court
For the Western District of Texas
No. A-02-CV-147-SS

November 27, 2002

Before DAVIS, WIENER, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

David Foster appeals the dismissal of his claims against Thomas Neville and the grant of

summary judgment in favor of Bank One, Texas, N.A. ("Bank One"). Foster contends that the

district court erred in finding that Neville was fraudulently joined to defeat diversity jurisdiction. He

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

further argues that summary judgment was improper because genuine issues of material fact exist regarding his claims against Bank One.

David Foster, a Texas resident, brought suit against Bank One, an Illinois corporation, and Thomas Neville, a Bank One Vice President residing in Texas. In 1998, Foster obtained a $310,000 home equity loan from Bank One secured by a lien on his Austin residence. In 2000, Foster renewed and extended that loan with a 20-year home equity loan in the amount of $531,000. Foster contends that Neville, who negotiated this loan on behalf of Bank One, promised him an "interest only" loan to purchase a lot in Austin and a construction loan to build a residence in Maine but instead delivered the extended home equity loan. In 2001, the loan was again renewed and extended in the amount of $523,270.50. Also in 2001, Bank One granted Foster a $750,000 loan for the construction of the residence in Maine.

Foster subsequently filed suit against Bank One and Neville in Texas state court alleging that the 2000 loan was illegal and unenforceable because it was not the loan Neville promised him and he agreed to it only as a result of economic duress. Foster also alleged that Neville's failure to deliver the promised terms constituted fraud and that the lien on his residence violated Article XVI, section 50(a)(6) o f the Texas Constitution. Foster sought compensatory and punitive damages totaling $7,000,000, a declaratory judgment that the lien on his residence was illegal and unenforceable, injunctive relief preventing Bank One from foreclosing on his residence, and attorney's fees and costs. Bank One and Neville removed the case to federal court on the basis of diversity jurisdiction and filed a motion to dismiss or for summary judgment. The district court found that diversity jurisdiction existed because Neville had been fraudulently joined, dismissed Foster's claims against Neville, and granted summary judgment in favor of Bank One. We affirm.

Because the disputed loans exceed the jurisdictional amount and complete diversity exists between Foster and Bank One, the only jurisdictional issue is whether Neville has been properly joined as a party. We review a district court's refusal to remand a removed case on the basis of fraudulent joinder *de novo*. *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 323 (5th Cir. 2001); *Johnson v. Heublein, Inc.*, 227 F.3d 236, 240 (5th Cir. 2000).

Under the fraudulent joinder doctrine, "[t]he removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995) (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983)) (internal quotation marks omitted). Removal jurisdiction is based on the claims in the state court complaint at the time of removal, and the plaintiff cannot manufacture jurisdiction by adding claims thereafter. *Id.* at 264 ("Without such a rule, disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant . . . .").

Foster contends that the district court erred in concluding that he could not state a claim against Neville in his individual capacity. Under Texas law, "an agent will not be personally liable on a contract made for his principal if the agent is acting within the scope of his authority." *Hartford Cas. Ins. Co. v. Walker County Agency, Inc.*, 808 S.W.2d 681, 687 (Tex. App.) Corpus Christi 1991, no writ). "[I]n order to avoid personal liability, an agent has the duty to disclose not only that he is acting in a representative capacity but also the identity of his principal." *Gonzales County Water Supply Corp. v. Jarzombek*, 918 S.W.2d 57, 60 (Tex. App.) Corpus Christi 1996, no writ).

Although an agent who exceeds his authority may become personally liable, an agent's authority "is presumed to be co-extensive with the business entrusted to his care and includes such contracts and acts as are incident to the management of the particular business with which he is entrusted." *Hartford Cas. Ins. Co.*, 808 S.W.2d at 687; *Augusta Dev. Co. v. Fish Oil Well Servicing Co.*, 761 S.W.2d 538, 543 (Tex. App.) ) Corpus Christi 1988, no writ) ("An agent has the implied authority to do all things proper, usual and necessary to accomplish the purpose for which the agency was created.").

Foster concedes that Neville was a disclosed agent of Bank One. Although Foster contends that he has stated a claim against Neville for breach of implied warranty of authority, no such claim appears on the face of his state court petition. Indeed, nowhere in his state court petition does Foster claim that Neville exceeded his authority in representing Bank One. Foster cannot create jurisdiction by asserting new claims after removal. For this same reason, the district court did not err in dismissing Foster's claims against Neville without providing Foster the opportunity to replead. Absent any basis for individual liability, Foster cannot establish a claim against Neville. Thus, we conclude that the district court did not err in dismissing Foster's claims against Neville and exercising diversity jurisdiction over the claims against Bank One.

Foster also contends that the district court erred in granting summary judgment in favor of Bank One. We review a district court's grant of summary judgment as a matter of law *de novo*. *Apani Southwest, Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 624 (5th Cir. 2002). "Summary judgment is proper where the pleadings and summary judgment evidence present no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Id.* at 624-25 (citing FED. R. CIV. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Foster first argues that summary judgment was improper because § 26.02 of the Texas Business and Commerce Code does not bar his tort claims against Bank One. Under § 26.02(b), "[a] loan agreement in which the amount involved . . . exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." *See also Maginn v. Norwest Mortgage, Inc.*, 919 S.W.2d 164, 169 (Tex. App.) ) Austin 1996, no writ) ("When tort claims have their nucleus in an alleged oral contract which is unenforceable under the statute of frauds, the statute of frauds bars the tort claims as well."). In addition, "[t]he rights and obligations of the parties to [a loan] agreement . . . shall be determined solely from the written loan agreement, and any prior oral agreements between the parties are superseded by and merged into the loan agreement." TEX. BUS. & COM. CODE ANN. § 26.02(c) (Vernon 2002). A loan agreement "may not be varied by any oral agreements or discussions that occur before or contemporaneously with the execution of the agreement." *Id.* § 26.02(d) (footnote omitted).

Foster contends that § 26.02's parol evidence rule does not apply to his claim that Neville's fraudulent representations negated his assent to the 2000 loan. Although claims alleging fraud in the inducement do not fall within Texas' parol evidence rule, *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 616 (Tex. App.) ) Waco 2000, no writ), Foster cannot state a claim for fraudulent inducement because "the fraud must be something more than merely oral representations that conflict with the terms of the written contract." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997) (citing *Distributors Inv. Co. v. Patton*, 110 S.W.2d 47, 48 (Tex. 1937)). Instead, Foster must show that he was "induced to go through the form of making a contract because of some fraud or misrepresentation made by the other party or his agent, relative to a material element of the

-5-

agreement, such that *if he had known the truth* he would not have given his assent . . . ." *Burleson State Bank*, 27 S.W.3d at 616 (quoting *Dallas Farm Mach. Co. v. Reaves*, 307 S.W.2d 233, 240 (1957)) (emphasis added). Here, Foster knew the truth but nevertheless agreed to the loan. Foster does not contend that, at the time he signed the promissory note and lien for the 2000 loan, he was misled as to their contents. In fact, he admits that, before signing, he called Neville, who informed him that Bank One could not provide different terms. Thus, Neville's alleged misrepresentations regarding the terms of the 2000 loan did not cause Foster to assent to that loan.

Foster also argues that 26.02's statute of frauds does not bar his negligent misrepresentation claim because that claim does not arise out of an oral contract.[1] Instead, he contends, his negligent misrepresentation claim is based on his reliance on Neville's promise to obtain terms for the 2000 loan that Bank One never intended to provide. In support of this argument, Foster cites the Texas Supreme Court's decision in *Federal Land Bank Association of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991), which concluded that the statute of frauds did not apply to a claim that "the bank did not agree to loan [the plaintiffs] money, yet negligently misrepresented that it had made such an agreement." *See also Maginn*, 919 S.W.2d at 169 (concluding that statute of frauds did not preclude negligent misrepresentation claim where plaintiffs alleged that defendant "never did agree to loan them money, but negligently represented that it would"). *Sloane* is not on point, however, because Bank One agreed to loan Foster money and did so, albeit not on the terms allegedly promised by Neville. Despite his protestations to the contrary, Foster's negligent misrepresentation claim is based

---

[1] This claim was raised for the first time in Foster's motion for a new trial under Federal Rule of Civil Procedure 59, which was denied by the district court. A district court's refusal to reconsider the grant of summary judgment is reviewed for an abuse of discretion. *Giles v. General Elec. Co.*, 245 F.3d 474, 494 (5th Cir. 2001); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1052 (5th Cir. 1996).

on Neville's oral promises and is therefore barred by 26.02's statute of frauds. *See Weakly v. East*, 900 S.W.2d 755, 759 (Tex. App.))Corpus Christi 1995, writ denied) (concluding that plaintiffs' negligent misrepresentation claim was barred by the statute of frauds because it "has as its nucleus [an] unenforceable oral contract"); *cf. Zaremba v. Cliburn*, 949 S.W.2d 822, 827 (Tex. App.))Fort Worth 1997, writ denied) ("Texas courts have uniformly looked with disfavor on litigants seeking to bypass the statute of frauds by pleading other causes of action."). Thus, we cannot conclude that the district court abused its discretion in denying Foster's request for a new trial on the basis of this claim.

Foster next argues that the 2000 loan is void or voidable under Article XVI, section 50(a)(6)(Q)(i) of the Texas Constitution because Neville allegedly informed Foster that the proceeds of that loan must be used to pay off advances made on Foster's money market account while the loan was pending. Under § 50(a)(6)(Q)(i), a home-equity lender may only require the borrower to use loan proceeds to pay: "(1) debts secured by the homestead; and (2) non-homestead debts to third-party creditors." *Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 356 (Tex. 2000). "Section 50(a)(6) . . . provides that the lender forfeits all principal and interest of the loan if it fails to comply with the obligations set out in section 50(a)(6)." *Id*. at 356-57 (citing TEX. CONST. art. XVI, § 50(a)(6)(Q)(x)). Foster does not contend that the promissory note and lien for the 2000 loan required repayment of the advances; instead, his claim is based solely on Neville's alleged representations. This claim is therefore barred by the statute of frauds.

Finally, Foster argues that the lien on his residence created pursuant to the 1998 loan is invalid under § 50(a)(6)(H) of the Texas Constitution because it encumbered real property in excess of the permissible amount and granted Bank One a security interest in personal property. An extension of

credit cannot be secured by any real or personal property other than the borrower's homestead. TEX. CONST. art. XVI, § 50(a)(6)(H) (Vernon Supp. 2002). At the time the promissory note and lien for the 1998 loan were executed, a homestead in a city, town or village was limited to one acre of land. TEX. CONST. art. XVI, § 51 (Vernon 1993). Foster's Austin home is situated on 1.75 acres. Although this encumbrance would constitute a violation of § 50(a)(6)(H), the 1998 lien provides that "notwithstanding any provision of this Homestead Lien Contract[] to the contrary in no event shall this Homestead Lien Contract require or permit any action which would be prohibited by Section 50(a)(6), Art. XVI, Texas Constitution, and all provisions of this Homestead Lien Contract shall be modified to comply fully with Section 50(a)(6), Art. XVI, Texas Constitution." Thus, to the extent that Bank One's 1998 lien encumbered property in violation of § 50(a)(6)(H), any defect was automatically cured. Moreover, in 1999, the maximum allowable urban homestead was increased to ten acres. TEX. CONST. art. XVI, § 51 (Vernon Supp. 2002). Thus, when the 2000 lien and promissory note renewed and extended the 1998 loan, any defect in the 1998 lien was remedied. *See Thompson v. Chrysler First Bus. Credit Corp.*, 840 S.W.2d 25, 29 (Tex. App.) ) Dallas 1992, no writ) ("In Texas, the execution of an 'extension agreement' pertaining to an outstanding debt is generally treated as a new contract evidencing the existing debt.").[2]

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[2] Foster's contention that the 1998 lien impermissibly created a security interest in his personal property is based on language in the lien defining the encumbered personal property as "all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now and hereafter attached or affixed to, or located on, the Real Property . . . ." Although Foster contends that this definition encompasses his furniture, personal effects and motor vehicles, it is not at all clear that this is the proper construction. Regardless, the savings clause of the 1998 lien prevents any security interests in violation of § 50(a)(6), and the 2000 lien does omits this language.