**Roberto GARZA, et al., Plaintiffs,**

v.

**BANCORP GROUP, INC., et al., Defendants.**

**Civil Action No. L–96–68.**

United States District Court, S.D. Texas, Laredo Division.

Dec. 16, 1996.

Charles R. Borchers, Person, Whitworth, Ramos, Borchers & Morales, L.L.P., Laredo, TX, for Plaintiffs.

Paul H. Cross, Smith & Moore, Dallas, TX, for Defendants.

### *MEMORANDUM AND ORDER*

KAZEN, Chief Judge.

Pending before the Court are the Motion for Summary Judgment of Defendants Bancorp Group, Inc. ("Bancorp") and Andy Baratta (Dckt. No. 7) and other associated motions.[1]

---

1. The other motions are Defendants' Motion to Strike and Objections to Plaintiffs' Affidavits ("Motion to Strike I") (Dckt. No. 19), Defendants' Motion to Strike and Objections to Plaintiffs' Amended Affidavits ("Motion to Strike II") (Dckt. No. 28), and Defendants' Motion to Dismiss Plaintiffs' Federal Fair Debt Collection Practices Act Claim (Dckt. No. 21).

## I. Factual Background

 This case arises out of two leases of security equipment, cameras, and recorders.[2] Plaintiffs Roberto Garza and his wife, Lydia Garza, are owners of two stores, Heights Meat Market and Variety Meats and Groceries, in Laredo, Texas. In the summer of 1994, Plaintiffs sought to lease security equipment for use in their two family-owned and -operated groceries. A representative of Silent Partner, Inc. ("SPI"), which supplies security equipment, informed Roberto Garza that the two leases would be lease-purchase agreements which would give him an option to purchase the equipment at the end of the lease term.[3] Roberto Garza accepted the equipment, and on July 7, 1994, he signed the two leases in his capacity as owner of the two groceries. On July 18, 1994, the vice president of Bancorp signed and accepted the leases on behalf of Bancorp. Bancorp had purchased the equipment from SPI and was thus the lessor.

Roberto Garza later ceased paying the monthly installments payable under the leases prior to the expiration of their primary terms. Contrary to the statements of the SPI representative in Laredo, the leases do not contain an option to purchase the security equipment at the end of the lease terms. With Bancorp's authorization, Andy Baratta, a Collection Manager at Bancorp, engaged in a pattern of harassing telephone calls to Plaintiffs and their children in an attempt to collect the outstanding payments under the lease. Bancorp also filed suit in Michigan state court against Roberto Garza for breach of the leases and obtained two default judgments.

Plaintiffs then filed suit in Texas state court. Plaintiffs allege that Defendants' conduct in seeking to collect the debt violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.A. §§ 1692–16920 (West 1982 & Supp.1996), and the Texas Debt Collection Practices Act ("TDCPA"), Tex.Rev.Civ.Stat.Ann. art. 5069–11.01–.12 (West 1987 & Supp.1997). Plaintiffs also allege that Defendants violated several provisions of the Texas Deceptive Trade Practices Act ("DTPA"), Tex.Bus. & Com.Code Ann. §§ 17.01–.854 (West 1987 & Supp.1997). These violations arise out of the misrepresentations by the SPI representative in Laredo that the leases would contain an option to purchase at the end of the lease term and that SPI was the supplier and lessor of the leased equipment.[4] Plaintiffs allege that

2. In stating the factual background, the Court applies the summary judgment standards that "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986), and that factual controversies are to be resolved in favor of the nonmoving party, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (per curiam).

3. Defendants argue that Plaintiffs have judicially admitted that they "dealt exclusively" with a representative of SPI in Laredo. *See* Notice of Removal, Attachment A, at 4 (Plaintiffs' Original Complaint) (Dckt. No. 1). Plaintiffs later amended their complaint. The amended complaint does not state that Plaintiffs "dealt exclusively" with the SPI representative; rather, it specifically enumerates Roberto Garza's dealings with the SPI representative. *See* Plaintiffs' Amended Complaint at 4–5. Factual allegations of a superseded pleading are only "some evidence" of the matter admitted, and it is up to the factfinder to decide on what weight to give them. *Kiepfer v. Beller*, 944 F.2d 1213, 1219 (5th Cir.1991) (citing *Borel v. United States Cas. Co.*, 233 F.2d 385, 387–88 (5th Cir.1956)). Thus, the factual allegations of Plaintiffs' original complaint are not judicial admissions, and they must be evalu-ated under the standard for reviewing a motion for summary judgment.

4. Specifically, Plaintiffs allege that this conduct violated DTPA § 17.46(a), which prohibits "false, misleading, or deceptive acts or practices;" DTPA § 17.46(b)(1), which prohibits "passing off goods or services as those of another;" DTPA § 17.46(b)(2), which prohibits "causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" DTPA § 17.46(b)(3), which prohibits "causing confusion ·or misunderstanding as to affiliation, connection, or association with, or certification by, another;" DTPA § 17.46(b)(5), which prohibits representing that goods or services have characteristics which they do not have or that a person has a connection which he does not have; DTPA § 17.46(b)(12), which prohibits "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve;" DTPA § 17.46(b)(14), which prohibits "misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;" DTPA § 17.46(b)(22), which prohibits filing certain consumer-related lawsuits in specified jurisdictions; and DTPA § 17.46(b)(23), which prohibits "the failure to disclose information concerning goods or services which was

Bancorp committed these violations both directly and through its alleged agent or representative, SPI. Bancorp removed this to case to federal court, answered, and made counterclaims. Leave was later granted for Plaintiffs to amend their complaint to add SPI as a defendant.

## II. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgement "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." The party moving for summary judgement must initially demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This showing can be made by relying on discovery material or the pleadings or by "pointing out to the district court [ ] that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. If the movant meets its burden, the nonmovant cannot simply rest on its pleadings but must identify specific facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little,* 37 F.3d at 1075 (citations omitted) (internal quotation marks omitted). Summary judgment is appropriate "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Id.* (quoting *Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir.1993)). In scrutinizing the evidentiary record, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

## III. FDCPA and TDCPA Claims

■ Defendants contend that the FDCPA and TDCPA do not apply to the leases because they are commercial transactions. The FDCPA defines a debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for *personal, family, or household purposes.*" 15 U.S.C.A. § 1692a(5) (emphasis added). The TDCPA defines a debt as "any obligation or alleged obligation arising out of a consumer transaction." Tex.Rev. Civ.Stat.Ann.art. 5069–11.01(a). It defines a consumer as "an individual who owes or allegedly owes a debt created primarily for personal, family, or household purposes," *id.* art. 5069–11.01(d), and a consumer transaction is defined as "a transaction in which one or more of the parties is a consumer," *id.* art. 5069–11.01(e).

■ Plaintiffs state that they sought the security equipment from Bancorp and SPI "for the primary purpose of protecting ourselves and our family." Amended Affidavit of Roberto Garza ¶ 3.[5] The fully executed lease agreements, however, provide that "Lessee also agrees that the Equipment will not be used for personal, family, or household purposes." The evidence shows that the equipment was installed at two stores owned by Roberto Garza, Heights Meat Market # 1 and Variety Meats and Groceries.

■ Even assuming that Plaintiffs obtained the security equipment for the purpose of protecting themselves and their family, nevertheless they clearly used the

---

known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

**5.** Defendants object that affidavits must be capable of being controverted. Motion to Strike II, at 5. Because Plaintiffs' "unilateral, subject statements" of their intended use of the equipment are "uncontrovertible," they are inadmissible.

*Id.* Defendants, however, do not cite to any federal rule of evidence or legal precedent to support this objection. Indeed, statements of subjective belief are admissible in federal court so long as they are relevant. The Court also disagrees with Defendants' assertion that subjective beliefs are not capable of being factually controverted. Accordingly, this objection is overruled.

equipment for business purposes. The equipment was installed at two commercial establishments. That the equipment was intended to provide security to family members working at the stores does not transform the purpose into a noncommercial one. The security equipment at any business provides personal protection to those who work there. The reach of the FDCPA and the TDCPA does not extend to the debts of family-owned businesses that are incurred for business purposes. Therefore, summary judgment is granted in favor of both Defendants as to Plaintiffs' FDCPA and TDCPA claims.

## IV. DTPA § 17.46(b)(22)

■ Plaintiffs allege that Defendants violated the DTPA, Tex.Bus. & Com.Code Ann. § 17.46(b)(22), by filing suit in Michigan on the leases. Section 17.46 includes

> filing suit founded upon a written contractual obligation of and signed by the defendant to pay money arising out of or based on a consumer transaction for goods, services, loans, or extensions of credit intended primarily for *personal, family, household, or agricultural use* in any county other than the county in which the defendant resides at the time of the commencement of the action or in any county in which the defendant in fact signed the contract

in its definition of "false, misleading or deceptive acts or practices." *Id.* (emphasis added). For the reasons stated in the preceding section, summary judgment is granted in favor of both Defendants as to Plaintiffs' cause of action under DTPA § 17.46(b)(22) because the goods were not leased for personal, family, household, or agricultural use.

## V. DTPA Claims Against Andy Baratta

■ Plaintiffs bring their remaining DTPA claims against both Andy Baratta and Bancorp itself. There is no evidence, however, that Baratta was personally involved in or authorized any of the conduct giving rise to these claims. Although, as detailed below, the Court requests supplemental briefing on legal issues surrounding Plaintiffs' remaining DTPA claims against Bancorp, summary judgment in favor of Baratta on these claims is granted.

## VI. Conclusion

For reasons stated, Defendants' motion for summary judgment is GRANTED in part. Defendants' motions to strike are DENIED to the extent discussed in this memorandum opinion. Defendants' motion to dismiss Plaintiffs' FDCPA claim is DENIED as moot.

The Court finds that the briefing on two issues is insufficient. Bancorp is ORDERED to further brief the issue of whether the default judgments obtained against Plaintiffs in Michigan state court are res judicata or collateral estoppel as to Plaintiffs' claims in the instant case and which jurisdiction's law controls that issue. If Bancorp maintains that the law of Michigan controls, then it should discuss whether *Sahn v. Estate of Brisson*, 43 Mich.App. 666, 204 N.W.2d 692 (1972), upon which Bancorp relies in its supplement to its motion for summary judgment, is still good law in light of later amendments to what is now Michigan Court Rule 2.203(A) and subsequent Michigan precedent.

Bancorp is also ORDERED to brief the issue of whether the provisions of the lease agreement are valid and binding on Plaintiffs, regardless of any prior or contemporaneous representations that might have been made by Bancorp and/or its alleged agent, SPI, contrary to the agreements' terms. In other words, can invocation of the DTPA overcome the express written language that the lease agreement controls over any prior oral representations or agreements?

Bancorp is ORDERED to file its brief by January 8, 1997. Plaintiffs and SPI shall have ten days from the date on which they are served with Bancorp's brief in which to file their response.