Ford v. City State Bank of Palacios








NUMBER 13-99-005-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

____________________________________________________________________



GARY C. FORD, Appellant,



v.




THE CITY STATE BANK OF PALACIOS AND J. DON LANDRY, Appellees.

____________________________________________________________________



On appeal from the 23rd District Court of Matagorda County, Texas.


____________________________________________________________________



O P I N I O N


Before Justices Hinojosa, Yañez, and Seerden (1)

Opinion by Justice Hinojosa



 Appellant, Gary C. Ford, filed a lender liability suit against appellees, The City State Bank of Palacios (CSB) and J. Don
Landry. Appellees moved for summary judgment, and the trial court granted the motion. By six issues, appellant
challenges the trial court's order granting appellees' motion for summary judgment. We affirm.

A. Traditional Summary Judgment


 When we review a traditional summary judgment brought under Texas Rule of Civil Procedure 166a(c), we must follow
these well-established rules:

(1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as
a matter of law;



(2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true; and



(3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant.



American Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985). A defendant's motion for summary judgment should be granted if he disproves at least
one essential element of each of the plaintiff's causes of action, or if he establishes all the elements of an affirmative
defense as a matter of law. Grinnell, 951 S.W.2d at 425; Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.
1997); Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). Evidence favoring the movant's position
will not be considered unless it is uncontradicted. Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391
S.W.2d 41, 47 (Tex. 1965). We accept as true evidence in support of the motion if not controverted. Swilley v. Hughes,
488 S.W.2d 64, 67 (Tex. 1972). Once the movant establishes its right to summary judgment as a matter of law, the burden
shifts to the nonmovant to offer any issue or evidence that would preclude summary judgment. City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).

 If a summary judgment is granted generally, without specifying the reason, it will be upheld if any ground in the motion for
summary judgment can be sustained. Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999); Carr v. Brasher,
776 S.W.2d 567, 569 (Tex. 1989); Weakly v. East, 900 S.W.2d 755, 758 (Tex. App.--Corpus Christi 1995, writ denied);
Benavides v. Moore, 848 S.W.2d 190, 192 (Tex. App.--Corpus Christi 1992, writ denied).

B. "No-Evidence" Summary Judgment


 When a party moves for summary judgment under Texas Rule of Civil Procedure 166a(i), asserting there is no evidence of
one or more essential elements of the nonmovant's claims upon which the nonmovant would have the burden of proof at
trial, the movant does not bear the burden of establishing each element of its own claim or defense. General Mills
Restaurants, Inc. v. Texas Wings, Inc., 12 S.W.3d 827, 832 (Tex. App.--Dallas 2000, no pet. h.); Lampasas v. Spring Ctr.,
Inc., 988 S.W.2d 428, 432-33 (Tex. App.--Houston [14th Dist.] 1999, no pet.); see also Tex. R. Civ. P. 166a(i). Instead,
the burden then shifts to the nonmovant to present enough evidence to be entitled to a trial: evidence that raises a genuine
fact issue on the challenged elements. See Tex. R. Civ. P. 166a cmt. If the nonmovant is unable to proffer enough
evidence, the trial judge must grant the motion. Lampasas, 988 S.W.2d at 433.

 A no-evidence summary judgment is improper if the respondent brings forth more than a scintilla of probative evidence to
raise a genuine issue of material fact. Merrell Dow Pharm. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Zapata v. The
Children's Clinic, 997 S.W.2d 745, 747 (Tex. App.--Corpus Christi 1999, pet. denied). Less than a scintilla of evidence
exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983); Zapata, 997 S.W.2d at 747. More than a scintilla of evidence exists when
the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. Havner,
953 S.W.2d at 711; Zapata, 997 S.W.2d at 747.

C. Factual and Procedural History


 Taking the evidence favorable to appellant as true and resolving all reasonable inferences and doubts in his favor, the facts
of the case are as follows. On May 24, 1994, appellant executed a promissory note (Note One) in the amount of $91,000
payable to CSB. The note provided for seven annual payments of $18,080. Note One was secured by an Agricultural
Security Agreement granting CSB a lien on all of appellant's accounts, equipment and farm products, including cattle and
"the born and unborn offspring thereof." CSB knew the purpose of the loan was to refinance cattle and an equipment note,
pay past due pasture rents, and purchase an additional sixty-five head of cattle. Landry, a CSB employee, submitted
appellant's application for a loan guaranty to the Farmers Home Administration (FmHA). FmHA agreed to guarantee a
loan to appellant in the amount of ninety percent of the indebtedness ($81,900). With part of the loan proceeds, appellant
acquired sixty-five additional cattle. Appellant made the first payment on time in May, 1995. At that time, he was
pasturing his cattle near his home in Bay City, Texas.

 In the fall of 1995, appellant began experiencing marital problems, which distracted him from his business. Also, the price
of cattle dropped greatly due to drought conditions. Appellant called Landry and told him he anticipated that he would not
be able to make the May, 1996 payment on Note One. After obtaining the necessary FmHA approval, Landry arranged an
extension of payments until November 25 of each year. Landry also offered appellant other financing. On November 30,
1995, appellant executed a second note (Note Two) to CSB in the amount of $23,142.50, secured by liens on vehicles and
trailers. However, contrary to appellant's affidavit testimony that Note Two was a new indebtedness, Note Two recites
"this Note is given in renewal of, but not in novation or discharge of, Loan Number 62297." Appellant had previously
signed Loan Number 62297 to pay off five existing loans he had with CSB.

 In June 1996, appellant told Landry he would not be able to make the November 25, 1996 payment because of the
continuing poor market conditions in the cattle industry. Landry and CSB promised not to default the note, and promised
that appellant could make the loan payment later when market conditions improved. However, it is uncontroverted that
Landry told appellant he would have to once again obtain FmHA approval for an extension of the loan.

 Appellant says that he relied on the promises made by Landry and CSB. If not for these promises, he would have sold his
cattle at distressed prices in order to meet the second note payment. Appellant was finally able to sell some of his cattle at
"a decent rate" in early December, 1996. On December 9, 1996, he made a partial payment of $11,249.09 on Note One,
leaving over $6,000 still due on the payment that had been due on November 25, 1996. Appellant also informed CSB that
he was moving the rest of the cattle to Baxter Island.

 Shortly after the December 9 payment, Landry referred appellant to Scott Arbuckle, whom Landry identified as "an agent
and loan packager for CSB," for assistance with "some additional paperwork" to extend Note One, which Landry described
as "a mini-loan package." Appellees' uncontradicted summary judgment evidence shows that the "additional paperwork"
was documentation necessary to obtain the required FmHA approval of the refinancing. It is undisputed that appellant
never completed the FmHA package.

 On December 17, 1996, appellant executed a third note (Note Three) to CSB in the amount of $3,500, secured by accounts
receivable. This amount was applied to the interest then outstanding on Note One because, as Landry informed appellant,
the FmHA would not approve the renewal and extension unless the interest was paid in full.

 On December 21, 1996, appellant received a letter from "CSB agent Arbuckle that required a new loan package, requiring
the $91,000 Note to be a new loan with new wetlands designations, which CSB and Landry knew [appellant] could not
comply with because [he] had moved his cattle to a different location." The new loan package contained new fees and
incidental costs. Appellant had no money to pay the additional costs. It is undisputed that appellant never completed this
package.

 On April 30, 1997, appellant filed for relief under Chapter 13 of the United States Bankruptcy Code because Landry had
informed him that CSB was going to foreclose on the collateral. Appellant filed schedules with the bankruptcy court that
listed the debt owed to CSB as uncontested, undisputed and liquidated, and did not list any claim appellant may have had
against CSB or Landry. Appellant's Chapter 13 plan provided for payments to the trustee of $2,237 per month for sixty
months to pay off CSB's claim.

 CSB filed a motion with the bankruptcy court asking for relief from the automatic stay, based on appellant's removal of the
collateral cattle to Baxter Island, a remote island "south of Matagorda." CSB contended the pasturage on the island was
poor, and the cattle were in danger of drowning if there was a storm. After a preliminary evidentiary hearing before the
bankruptcy court, appellant filed an amended plan that provided for semi-annual payments of $12,312 to pay off CSB's
claim. 

 After the bankruptcy court held the final evidentiary hearing on CSB's motion for relief from the automatic stay, the
bankruptcy judge signed an order continuing the stay on the condition that appellant make timely payments under the plan
to the trustee. Appellant failed to make the first required payment, and the stay terminated. Appellant moved for voluntary
dismissal of his bankruptcy action on December 12, 1997, and the bankruptcy court granted the dismissal on May 8, 1998.

 Appellant filed this case on January 13, 1998, asserting causes of action under the Texas Debt Collection Practices Act
(DCPA) (2) and the Texas Deceptive Trade Practices--Consumer Protection Act (DTPA). (3) He further requested punitive
damages, injunctive relief, declaratory judgment and attorney's fees. Appellees counterclaimed for the amounts due under
the notes and for attorneys' fees. Appellees moved for summary judgment, on both traditional and no-evidence grounds,
that appellant take nothing, and that they prevail on their counterclaim. Appellant amended his petition and added causes
of action for breach of contract, promissory estoppel and detrimental reliance, and fraud. Appellant addressed these new
causes of action in his response to appellees' motion for summary judgment. Appellees also addressed these new causes of
action in their reply to appellant's response. The trial court granted appellees' motion for summary judgment. This appeal
ensued.

D. Jurisdiction

 Under Texas procedure, appeals are allowed only from final orders or judgments. Jack B. Anglin Co. v. Tipps, 842 S.W.2d
266, 272 (Tex. 1992); North East Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 895 (Tex. 1966). A judgment that
actually disposes of every remaining issue in the case is not interlocutory merely because it recites that it is partial or refers
to only some of the parties or claims. Lehmann v. Har-Con Corp., Nos. 99-0406 and 990461, 2001 Tex. LEXIS 6, *41-*42
(Tex. Feb. 1, 2001). It may be necessary for the appellate court to look to the record in the case to determine whether an
order disposes of all pending claims and parties. Id. at *49.

 After reviewing the record, we conclude the trial court's order granting appellees' motion for summary judgment disposes
of all parties and claims. Accordingly, we hold it is a final, appealable order.

E. Res Judicata and Collateral Estoppel


 In his first issue, appellant questions whether his claims in this lawsuit are barred by a prior order of the bankruptcy court
under the principles of res judicata or collateral estoppel, or by the statute of frauds. We will first discuss the res judicata
and collateral estoppel issues. We will discuss the statute of frauds issue later in this opinion.

 Appellant asserts the claims in this case are not precluded by the doctrines of res judicata and collateral estoppel and
contends the trial court erred if it granted appellees' motion for summary judgment on these doctrines. Res judicata is an
affirmative defense. Tex. R. Civ. P. 94. Summary judgment is proper in a case barred by res judicata. See Barr v.
Resolution Trust Corp. ex rel. Sunbelt Fed. Sav., 837 S.W.2d 627, 627-28 (Tex. 1992). 

 Because the bankruptcy order was a federal court proceeding, this Court is required to apply the federal definition of res
judicata. San Antonio Indep. Sch. Dist. v. McKinney, 936 S.W.2d 279, 281 (Tex. 1996); Jeanes v. Henderson, 688 S.W.2d
100, 103 (Tex. 1985). The rules of res judicata encompass two separate but linked preclusive doctrines: (1) true res
judicata or claim preclusion and (2) collateral estoppel or issue preclusion. St. Paul Mercury Ins. Co. v. Vale, 224 F.3d
425, 436 (5th Cir. 2000); Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 535 (5th Cir. 1978); Barr,
837 S.W.2d at 628. The former is what we typically call "res judicata," and it treats a judgment, once rendered, as the full
measure of relief to be accorded between the same parties on the same "claim" or "cause of action." St. Paul Mercury, 224
F.3d at 435; Kaspar Wire, 575 F.2d at 535; Barr, 837 S.W.2d at 628. 

Res judicata incorporates the doctrines of merger and bar, thereby extending the effect of a judgment to the litigation of all
issues relevant to the same claim between the same parties, whether or not those issues were raised at trial. Collateral
estoppel precludes the relitigation of issues actually adjudicated, and essential to the judgment, in a prior suit between the
parties on a different cause of action.



St. Paul Mercury, 224 F.3d at 435; Kaspar Wire, 575 F.2d at 535. Collateral estoppel is not implicated in this case because
the issue of lender liability was not actually litigated in the bankruptcy proceeding. See St. Paul Mercury, 224 F.3d at 435;
Barr, 837 S.W.2d at 628; Bonniwell v. Beech Aircraft Corp., 663 S.W.2d 816, 818 (Tex. 1984).

 Under federal law, the doctrine of res judicata, or claim preclusion, will apply if: (1) the parties in both suits are identical;
(2) the prior judgment was rendered by a court of competent jurisdiction; (3) there is a final judgment on the merits; and (4)
the same cause of action is involved in both cases. McKinney, 936 S.W.2d at 281; Eagle Properties, Ltd. v. Scharbauer,
807 S.W.2d 714, 718 (Tex. 1990). Under the doctrine of claim preclusion, a final judgment on the merits of an action
precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Rivet v.
Regions Bank of La., 522 U.S. 470, 476 (1998) (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)).

 In their motion for summary judgment, appellees asserted that because appellant did not raise any issues relating to the
debt in question in his bankruptcy proceeding, he is barred by the doctrine of res judicata from raising those issues now in
state court. The critical question in this case is whether the bankruptcy court's order conditionally continuing the automatic
stay was a "final judgment on the merits." See McKinney, 936 S.W.2d at 281; Eagle Properties, 807 S.W.2d at 718 (Tex.
1990). 

 In D-1 Enter., Inc. v. Commercial State Bank, 864 F.2d 36 (5th Cir. 1989), the Fifth Circuit addressed the issue of whether
an agreed order entered in a contested bankruptcy hearing has preclusive effect over a debtor's subsequent lender liability
claims. Id. at 39-40. D-1 filed Chapter 11 bankruptcy proceedings to stave off a major creditor. Id. at 37. The bankruptcy
court eventually accepted an agreed order lifting the stay and abandoning most of D-1's assets to the creditor. Id. Later,
D-1 received permission to retain counsel to pursue potential lender liability claims against the creditor, and did file such a
claim within the continuing bankruptcy. Id. Upon motion by the parties to have the case heard in district court, that court
held that the lender liability claims were barred by res judicata because they should have been raised earlier in the course of
the bankruptcy. Id. at 38.

 The Fifth Circuit noted that the current bankruptcy rules contain an expedited procedure (found in 11 U.S.C.S. §§ 362(d),
(e)) (4) for creditors to obtain relief from the automatic stay mandated by 11 U.S.C.S. § 362(a), and that the legislative
history of those statutes

makes clear that counterclaims against a creditor seeking to lift the stay on largely unrelated matters are not to be handled
in the summary fashion required by the expedited nature of the proceeding. Instead, they will be the subject of more
complete proceedings to recover property of the estate or to object to the allowance of a claim. Consistent with the
legislative history, the courts have held that "indirect defenses," such as breach of contract, fraud and the like, would be
severed from the expedited stay litigation if raised in an effort to defeat the creditor's motion. The lender liability claims
asserted in the adversary proceeding at issue in this case were not, under the foregoing analysis, "direct defenses" that the
debtor could or should have litigated in response to the creditor's motion for relief from the stay. Hence, they are not
precluded by the application of res judicata.



Id. at 38-39 (citations omitted). The Fifth Circuit accordingly held that D-1's lender liability claims were not barred
because res judicata has no application to contested matters where the claim sought to be barred could not have been
effectively litigated. Id. at 40. 

 We find the reasoning of D-1 Enterprises applicable in this case. CSB filed an emergency motion with the bankruptcy
court claiming that an "act against property" had occurred: the collateral cattle had been moved to a remote island with poor
pasturage and flooding problems. The bankruptcy court denied CSB's motion and issued an order continuing the automatic
stay on the condition that appellant make timely payments to CSB under its amended Chapter 13 plan. We conclude that
lender liability claims surrounding the note for which the cattle were collateral would not and should not have been
litigated at that expedited hearing.

 We hold that appellees failed to establish as a matter of law that appellant's lender liability claims are barred by the
doctrines of res judicata and collateral estoppel. Accordingly, we sustain the part of appellant's first issue relating to the
doctrines of res judicata and collateral estoppel. We hold the trial court erred if it granted appellees' motion for summary
judgment on these grounds. 

 We must now determine whether the trial court's order granting summary judgment is sustainable on any other grounds. 
See Bradley, 990 S.W.2d at 247; Carr, 776 S.W.2d at 569; Weakly, 900 S.W.2d at 758. 

F. DTPA Claims


 In his third issue, appellant questions whether he is a consumer under the Texas Deceptive Trade Practices--Consumer
Protection Act (DTPA) and whether his allegations come within the scope of the Act.

 In their motion for summary judgment, appellees asserted that appellant is not a consumer under the DTPA, and therefore
cannot recover for his DTPA claims as a matter of law. To have standing to sue under the DTPA, a party must establish
that he is a consumer as defined by the DTPA. Tex. Bus. & Com. Code Ann. § 17.50(a)(Vernon Supp. 2001); Crown Life
Ins. Co. v. Casteel, 22 S.W.3d 378, 386 (Tex. 2000); Norwest Mortgage, Inc. v. Salinas, 999 S.W.2d 846, 854 (Tex.
App.--Corpus Christi 1999, writ denied); Brown v. Bank of Galveston, N.A., 930 S.W.2d 140, 143 (Tex. App.--Houston
[14th Dist.] 1996), aff'd, 963 S.W.2d 511 (Tex. 1998). Whether a plaintiff is a consumer under the DTPA is a question of
law to be determined by the trial court from the evidence. Norwest, 999 S.W.2d at 854;Holland Mortgage & Inv. Corp. v.
Bone, 751 S.W.2d 515, 517 (Tex. App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.). However, the underlying factual basis
giving rise to consumer standing may present factual issues for the jury. Vinson & Elkins v. Moran, 946 S.W.2d 381, 406
(Tex. App.--Houston [14th Dist.] 1997, writ dism'd by agr.). 

 To qualify as a consumer under the DTPA, a party must meet two requirements. Norwest, 999 S.W.2d at 854; Brown, 930
S.W.2d at 143. First, he must seek or acquire goods (5) or services (6) by lease or purchase. Tex. Bus. & Com. Code Ann. §
17.45(4)(Vernon Supp. 2001); Crown Life, 22 S.W.2d at 386. Second, the goods or services sought or acquired must form
the basis of the party's complaint. Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 351-52 (Tex. 1987); Norwest, 999
S.W.2d at 854; Brown, 930 S.W.2d at 143. If either requirement is lacking, the party must look to the common law or
some other statutory provision for redress. Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 539 (Tex. 1981); Brown,
930 S.W.2d at 143. In determining whether a plaintiff is a consumer, the focus is on the plaintiff's relationship to the
transaction. Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 815 (Tex. 1997); Norwest, 999 S.W.2d at 854.

 Generally, a pure loan transaction lies outside the DTPA because money is considered to be neither a good nor a service. 
Riverside Nat'l Bank v. Lewis, 603 S.W.2d 169, 174-75 (Tex. 1980); Norwest, 999 S.W.2d at 855; Brown, 930 S.W.2d at
143. However, subsequent cases have limited the Riverside doctrine. In Knight v. International Harvester Credit Corp.,
627 S.W.2d 382, 381 (Tex. 1982), the plaintiff obtained a loan to purchase a dump truck; he later sued both seller and
lender because a waiver provision in the installment contract violated the DTPA. Id. at 383-84. The lender was held
subject to a DTPA claim because the lender and the seller were inextricably intertwined in the sales transaction. See also
Norwest, 999 S.W.2d at 855; Brown, 930 S.W.2d at 143 (where extension of credit is incident to sale of goods or services
and conduct of party extending credit is intertwined in transaction, borrower may be consumer with respect to creditor, as
well as to seller, of goods). A creditor may be inextricably intertwined in the transaction so as to confer consumer status on
a party if the extension of credit forms the means of making the sale or purchase from the buyer's perspective. Norwest,
999 S.W.2d at 855; Brown, 930 S.W.2d at 143-44.

 However, it is clear that the DTPA does not impose vicarious liability based on innocent involvement with business
transactions. Norwest, 999 S.W.2d at 855;Brown, 930 S.W.2d at 143 n. 1. To hold a creditor liable in a consumer credit
transaction, the creditor must be shown to have some connection with either the actual sales transaction or with a deceptive
act related to financing the transaction. Home Sav. Ass'n v. Guerra, 733 S.W.2d 134, 136 (Tex. 1986); Flenniken v.
Longview Bank & Trust Co., 661 S.W.2d 705, 706 (Tex. 1983); Knight, 627 S.W.2d at 389; Norwest, 999 S.W.2d at 855;
Brown, 930 S.W.2d at 144.

 In Flenniken, 661 S.W.2d at 706, the plaintiffs executed a note and materialman's lien to a builder for the construction of a
home on their property. Id. at 706. On the same day, the builder assigned the note and the lien to the bank in return for 
interim financing on the construction job. Id. The bank disbursed the entire loan amount to the builder despite the fact that
he completed only twenty percent of the work. Id. The builder subsequently abandoned the job, and the plaintiffs stopped
paying on the note. Id. The bank then foreclosed on the property under the terms of the deed of trust. Id. The bank later
conceded that the foreclosure was wrongful. See Longview Bank & Trust Co. v. Flenniken, 642 S.W.2d 568, 570 n. 2 (Tex.
App.--Tyler 1982), rev'd, 661 S.W.2d 705 (Tex. 1983). The supreme court held the bank liable under a DTPA cause of
action without overruling Riverside. Flenniken, 661 S.W.2d at 706. It did not differentiate between the transaction
between the plaintiffs and the builder, and the builder's transaction with the bank, but instead, viewed the transaction as a
whole from the buyer's perspective. Id. The court reasoned that the plaintiffs were consumers because they "did not seek
to borrow money; they sought to acquire a house." Id. at 707-08; but see Ogden v. Dickenson State Bank, 662 S.W.2d 330,
333 (Tex. 1983) (in a case with facts almost identical to those in Flenniken, the supreme court decided that, because the
bank, which did not concede the foreclosure was wrongful, had a contractual right to foreclose when it did, it was not liable
under DTPA).

 In both Knight and Flenniken, however, the goods or services sought by the borrower formed the basis for the DTPA case. 
In Central Tex. Hardware, Inc. v. First City Tex.--Bryan, N.A., 810 S.W.2d 234 (Tex. App.--Houston [14th Dist.] 1991,
writ denied), the plaintiff was a hardware store that had an extensive business history with the defendant bank, including a
line of credit it used to purchase seasonal inventory goods. Id. at 236. The bank's president told the store owner that the
Small Business Administration would combine a proposed loan for purchase of seasonal goods with two other outstanding
loans. Id. He offered to negotiate the deal, and stated that it would take one or two weeks to work out. Id. The loan was
never worked out, and the store ultimately closed because, without the loan, it could not purchase needed inventory. Id. 
The store owner eventually found out that the delay had been caused not by the SBA, as represented by the bank, but by the
bank's demand that the SBA guarantee an additional five to ten percent of the loan. Id. The Fourteenth Court of Appeals
held that the hardware store was not a consumer under these circumstances simply because it intended to acquire goods
with the loan. Id. at 237. Because the store did not allege any complaint regarding the inventory goods it intended to
purchase with the loan, the second step of the two-prong test for determining consumer status had not been met. Id.; see
also Walker v. Federal Deposit Ins. Corp., 970 F.2d 114, 123 (5th Cir. 1992) (holding plaintiff, who sued after complicated
deal involving promise to lend money fell through, was not consumer under the DTPA merely because it planned to
construct a hotel with the loan proceeds). But see Security Bank v. Dalton, 803 S.W.2d 443, 452-53 (Tex. App.--Fort Worth
1991, writ denied) (loans taken for purpose of constructing and furnishing funeral home "were clearly taken in connection
with the sale of a good or service and thus qualify appellees as consumers under DTPA") (citing Knight, 627 S.W.2d at
388). As the Fifth Circuit has noted,

The Texas courts of appeal are obviously split on this issue. Because Riverside has yet to be expressly overruled, we
believe the court of appeals in Houston has taken the wisest and most logical course.



Walker, 970 F.2d at 123. We agree.

 In the instant case, appellant sought to borrow money from CSB with the intention of purchasing cattle with part of the
loan proceeds. He asserts that he is a consumer because he sought to acquire goods with a portion of the loan proceeds.
Appellant has not alleged that CSB or Laney had any connection with the actual purchase of the cattle, nor has he alleged
that appellees committed any deceptive act related to the initial financing of the purchase transaction. See Norwest, 999
S.W.2d at 855; Brown, 930 S.W.2d at 144. Instead, he alleges that appellees engaged in post-sale misrepresentations
regarding the possibility of renewing and extending Note One.

 Although appellees' allegedly unconscionable course of action occurred after the purchase of the goods, it does not
automatically exempt them from liability under the DTPA. See Flenniken, 661 S.W.2d at 707. However, the cattle bought
by appellant with a portion of the loan proceeds are not the basis of his complaint here. Therefore, the second prong of the
definition of consumer status has not been met. See Melody Home, 741 S.W.2d at 351-52; Norwest, 999 S.W.2d at 854;
Brown, 930 S.W.2d at 143.

 We hold that appellant is not a consumer under the DTPA. We hold the trial court did not err in granting appellees' motion
for summary judgment as to appellant's DTPA causes of action. Appellant's third issue is overruled.

G. DCPA Claims


 In his second issue, appellant questions whether he is a consumer under the Texas Debt Collection Practices Act (DCPA)
and whether his "allegations apply to the facts herein." In their motion for summary judgment, appellees asserted that
appellant was not a consumer under the DCPA and that, as a matter of law, he could not recover on his DCPA claims.

 The DCPA provides remedies for wrongful debt collection practices arising out of a debtor/creditor relationship. 
Campbell v. Beneficial Fin. Co. of Dallas, 616 S.W.2d 373, 375 (Tex. App.--Texarkana 1981, writ denied). "Debt" means
any obligation or alleged obligation arising out of a consumer transaction. Act of May 19, 1973, 63rd Leg., R.S., ch. 547,
§ 9, 1973 Tex. Gen. Laws 1513. (7) "Consumer transaction" means a transaction in which one or more of the parties is a
consumer. Id. "Consumer" means an individual who owes or allegedly owes a debt created primarily for personal, family
or household purposes. Id. The DCPA does not define "personal;" therefore, consistent with the DCPA, we must give the
term its common meaning. Tex. Gov't Code Ann. § 312.006(a) (Vernon 1998); Monroe v. Frank, 936 S.W.2d 654, 656
(Tex. App.--Dallas 1996, no writ). "Personal" is defined as "of or relating to a particular person; affecting one individual or
each of many individuals; peculiar or proper to private concerns." Monroe, 936 S.W.2d at 660 (quoting Webster's Third
New Int'l Dictionary 1686 (1981)). However, an obligation arising out of a commercial transaction is not within the scope
of the DCPA. First Gibraltar Bank, FSB v. Smith, 62 F.3d 133, 135 (5th Cir. 1995).

 Appellees assert appellant is not a consumer under the DCPA because he did not take out the loans for personal, family or
household purposes. Notes Two and Three are entitled "Fixed Rate Commercial Promissory Note," and each is
collateralized with a "Commercial Security Agreement." Notes Two and Three are clearly commercial loans and, therefore,
fall outside the scope of the DCPA.

 Note One is entitled "Agricultural Revolving or Draw Note -- Variable Rate," and is collateralized by an "Agricultural
Security Agreement." In his summary judgment evidence, appellant said he took out Note One "to refinance cattle and an
equipment Note, to pay past due pasture rents and to purchase an additional sixty-five (65) head of bred cattle." He further
stated the loan "was taken out by me for my personal and family purposes to make a personal income for me and my
family." Appellees' summary judgment evidence includes schedules from appellant's Chapter 13 bankruptcy proceeding in
which he lists income from his agricultural business. 

 Appellant cites Monroe, 936 S.W.2d at 654, in support of his contention that Note One was created primarily for personal,
family or household purposes. In Monroe, the debtor incurred the debt in question in order to raise bail so that an
eighty-one year old friend could get out of jail. Id. at 656-57. The Dallas court of appeals held that this debt constituted a
consumer transaction because "[a] reasonable fact finder could have found that the debtor derived benefit for himself from
the transaction." Id. at 660. There was no contention in Monroe that the debt in question was a commercial obligation. 

 Appellant also cites Campbell, 936 S.W.2d at 660, for the proposition that "even if the debt was not a personal debt,
appellant could maintain an action under the [DCPA] as 'any person' who is adversely affected by the prohibited conduct."
However, Campbell, in which a plaintiff brought suit over her harassment by a creditor of her daughter and son-in-law,
actually held that the DCPA

requires that the wrong complained of must arise out of a debtor/creditor relationship, but it does not limit the cause of
action to the debtor. Any person against whom the prohibited acts are committed may maintain an action for actual
damages sustained as a result of those violations.



Id. As in Monroe, there was no allegation in Campbell that the underlying debt, which was incurred for the purpose of
purchasing household goods, was not a consumer transaction. Appellant also cites Waterfield Mortgage Co. v. Rodriguez,
939 S.W.2d 641 (Tex. App.--San Antonio 1996, no writ). However, Waterfield involved a debt which was incurred to
purchase a family home. Id. at 643. As in Campbell, there was no contention in Waterfield that the debt was not a
consumer transaction. See Waterfield, 641 S.W.2d at 643.

 We find the reasoning in Garza v. Bancorp Group, Inc., 955 F.Supp. 68, 71-72 (S.D. Tex. 1996), much more relevant. In
Garza, the suit arose out of the lease of security equipment. Id. at 70. Garza, the owner of two family-business meat
markets, leased security equipment in order to provide security for family members working at the markets. Id. The court
held that: (1) despite the intent to benefit family members, the purpose of the loan was a commercial one, and (2) the
DCPA does not extend to the debts of family-owned businesses that are incurred for business purposes. Id. at 71-72. Here,
appellant claims the debt in question is "personal" because the income derived from his agricultural business benefitted
himself and his family. While this may be so, it does not alter the commercial nature of the loan.

 We hold that Notes One, Two and Three were not incurred in consumer transactions, and that appellant has no cause of
action under the DCPA. Accordingly, we hold the trial court did not err in granting appellees' motion for summary
judgment as to appellant's DCPA causes of action. Appellant's second issue is overruled.

H. Breach of Contract Claims


 In his fourth issue, appellant questions whether appellees' actions constitute a breach of contract.

1. Breach of Written Contract -- Note One


 Appellant alleged appellees breached the contract contained in Note One. The elements of a breach of contract claim are:
(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (2) breach of the contract by
the defendant; and (4) damages to the plaintiff resulting from that breach. Wright v. Christian & Smith, 950 S.W.2d 411,
412 (Tex. App.--Houston [1st Dist.] 1997, no writ). The terms of Note One are set out clearly and unambiguously. It is
undisputed that the parties entered into Note One, and that CSB advanced the loan proceeds. It is also undisputed that
appellant failed to make the required November 25, 1996 payment in full. The note and the accompanying security
agreement state that, upon default, the lender may, inter alia, declare the principal amount plus accrued interest
immediately due and payable in full, and lawfully and peaceably take possession of any collateral. We hold that the
appellees have established as a matter of law that they did not breach the contract contained in Note One.

2. Breach of Oral Contract and the Statute of Frauds


 We now also review the part of appellant's first issue which questions whether his claims are barred by the statute of
frauds. Appellant claimed that appellees breached an alleged oral contract to extend or renew Note One. Appellees
responded that appellant's claim for breach of an oral contract to extend or delay the payments due under Note One was
barred by the statute of frauds which states, in relevant part: 

(b) A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable
unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative.



Tex. Bus. & Com. Code Ann. § 26.02(b) (Vernon Supp. 2001). A "loan agreement" means:

one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents,
or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or
delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend
credit or make a financial accommodation.



Tex. Bus. & Com. Code Ann. § 26.02(a)(2) (Vernon Supp. 2001) (emphasis added). 

 Note One provides, in relevant part, as follows:

6. MODIFICATION AND WAIVER. The modification or waiver of any of Borrower's obligations or Lender's rights
under this Note must be contained in a writing signed by Lender. Lender may perform any of Borrower's obligations or
delay or fail to exercise any of its rights without causing a waiver of those obligations or rights. A waiver on one occasion
will not constitute a waiver on any other occasion.

 

The Agricultural Security Agreement contains the same language, which is clear and unambiguous. 

 Appellant cites Digby v. Texas Bank, 943 S.W.2d 914 (Tex. App.--El Paso 1997, writ denied), in support of his contention
that the statute of frauds has no application to his claims. In Digby, Texas Bank filed criminal charges against Digby for
alleged misuse of collateral. Id. at 917-18. Digby was eventually acquitted of these charges, and filed suit against Texas
Bank alleging malicious prosecution. Id. The trial court granted summary judgment in favor of the bank. Id. at 918. The
El Paso Court of Appeals held that the issue of whether or not the alleged oral contracts between the bank and Digby were
valid, would not defeat Digby's claims for malicious prosecution. Id. at 929. Thus, the statute of frauds did not bar the
claim. Id.

 In the instant case, appellant claims the alleged oral modifications to Note One are enforceable oral contracts, and that
CSB breached those oral contracts. We conclude that Digby, which specifically did not concern the validity of the oral
modifications, does not apply. We hold that appellees have established as a matter of law that appellant's claim for breach
of contract as to any oral modifications of Note One is barred by the statute of frauds. We overrule the part of appellant's
first issue relating to the statute of frauds.

 In his fifth issue, appellant questions whether he has claims for promissory estoppel and detrimental reliance. Detrimental
reliance, however, is merely an element of promissory estoppel. See Secure Comm., Inc. v. Anderson, 31 S.W.2d 428, 430
(Tex. App.--Austin 2000, no pet. h.) (citing English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983)); Gilmartin v. KVTV --
Channel 13, 985 S.W.2d 553, 558 (Tex. App.--San Antonio 1998, no writ).

3. Promissory Estoppel as a Defense to the Statute of Frauds


 Appellant asserts promissory estoppel as a defense to appellees' assertion of the statute of frauds as a bar to his claim of
breach of oral contract. Appellant alleges that appellees promised him he could make his loan payments at a later date,
when cattle market conditions improved. In reliance on these promises, he elected not to sell his cattle at that time in order
to meet his loan payments, resulting in his default under Note One.

 The doctrine of promissory estoppel is derived from § 90 of the Restatement of Contracts, which states:

A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial
character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be
avoided only by enforcement of the promise.



Restatement (Second) of Contracts § 90 (1971); Aubrey v. Workman, 384 S.W.2d 389, 393 (Tex. App.--Fort Worth 1964,
writ ref'd n.r.e.). Promissory estoppel does not operate to create liability where it does not otherwise exist. Hruska v. First
State Bank of Deanville, 747 S.W.2d 783, 785 (Tex. 1988). Promissory estoppel does not create a contract where none
existed before, but only prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to
enforce them. "Moore" Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934, 937 (Tex. 1973).

 The requisites of promissory estoppel in Texas are: (1) a promise; (2) foreseeability of reliance thereon by the promisor;
and (3) substantial reliance by the promisee to his detriment. English, 660 S.W.2d at 524. When promissory estoppel is
raised to bar the application of the statute of frauds, there is an additional requirement that the promisor promised to sign a
written document complying with the statute of frauds. Nagle v. Nagle, 633 S.W.2d 796, 800 (Tex. 1982); "Moore"
Burger, 492 S.W.2d at 936-37 (Tex. 1973); Maginn v. Norwest Mortgage, Inc., 919 S.W.2d 164, 167 (Tex. App.--Austin
1996, no writ); Coastal Corp. v. Atlantic Richfield Co., 852 S.W.2d 714, 718 (Tex. App.--Corpus Christi 1993, no writ);
Cobb v. West Tex. Microwave Co., 700 S.W.2d 615, 616 (Tex. App.--Austin 1985, writ ref'd n.r.e.). 

 We have held above that appellees' summary judgment proof establishes as a matter of law that appellant's claim for
breach of oral contract is barred by the statute of frauds. Therefore, the burden was on appellant, if he wished to avoid
summary judgment, to come forward with summary judgment proof raising a fact issue concerning his promissory estoppel
defense to the statute of frauds. Nichols v. Smith, 507 S.W.2d 518, 521 (Tex. 1974); "Moore" Burger, 492 S.W.2d at
936-37; Cobb, 700 S.W.2d at 616. To prevent the rendition of summary judgment on an otherwise valid statute of frauds
defense, the nonmovant must produce some evidence of the following:

(1) the movant made an oral promise to sign a written agreement that satisfied the statute, and the nonmovant foreseeably
relied on the promise to his detriment; or



(2) the movant orally represented the statute of frauds had been satisfied, and the nonmovant relied to his detriment on the misrepresentation.



"Moore" Burger, 492 S.W.2d at 936-37. 

 Appellant's assertion must fail for two reasons. First, the summary judgment proof establishes Landry told appellant that
he had to obtain FmHA approval for a renewal and extension of his FmHA-guaranteed agricultural loan. This constitutes a
conditional promise. A condition precedent may be either a condition to the formation of the contract or to an obligation to
perform an existing agreement. Hohenberg Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976). To make
performance conditional, terms such as "if," "provided that," "on condition that," or some similar phrase of conditional
language must normally be included, although there is no requirement to utilize such language. Criswell v. European
Crossroads Shopping Ctr., Ltd., 792 S.W.2d 945, 945 (Tex. 1990). It is clear from the summary judgment proof that
appellees conditioned their offer of an extension and renewal of appellant's FmHA-guaranteed loan upon appellant's
obtaining FmHA approval of such an extension and renewal. It is undisputed that appellant never met this condition. In
fact, it is undisputed that he never even completed the documents required to obtain FmHA approval.

 Second, an examination of appellant's summary judgment evidence reveals there is no evidence of the fourth requirement
-- that CSB or Landry ever promised to execute a written document evidencing the extension. Such a claim is made in
appellant's Response to Defendants' Motion for Summary Judgment. However, it is well-established that pleadings, such as
a response to a motion for summary judgment, are not evidence. Americana Motel, Inc. v. Johnson, 610 S.W.2d 143, 143
(Tex. 1980); Rath v. State, 788 S.W.2d 48, 50 (Tex. App.--Corpus Christi 1990, writ denied). We hold that appellant failed
to produce summary judgment evidence as to at least two of the elements of his defense of promissory estoppel, and thus,
did not meet his burden of proof to defeat appellees' motion for summary judgment.

I. Promissory Estoppel as an Independent Cause of Action


 Promissory estoppel is primarily a defensive theory; it is a plea in confession and avoidance. "Moore" Burger, 492 S.W.2d
at 936; Birenbaum v. Option Care, Inc., 971 S.W.2d 497, 504 (Tex. App.--Dallas 1997, no writ). However, promissory
estoppel is also a cause of action available to a promisee who has acted to his detriment in reasonable reliance on an
otherwise unenforceable promise. Wheeler v. White, 398 S.W.2d 93, 96-97 (Tex. 1965); David McDavid Nissan, Inc. v.
Subaru of Am., Inc., 10 S.W.3d 56, 73 (Tex. App.--Dallas 1999, pet. granted); Henderson v. Texas Commerce Bank --
Midland, N.A., 837 S.W.2d 778, 781-82 (Tex. App.--El Paso 1992, writ denied). Generally, promissory estoppel is a viable
alternative to a breach of contract. Allied Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex. App.--Houston [14th Dist.] 1999,
pet. denied). However, as when promissory estoppel is used as a defense, if the underlying oral promise is barred by the
statute of frauds, the plaintiff must show that the promisor promised to sign a written document that would satisfy the
statute of frauds. See Nagle v. Nagle, 633 S.W.2d 796, 799-800 (Tex. 1982).

 As we stated above, appellant failed to meet a condition precedent of the alleged promise by appellees and failed to
produce summary judgment evidence that appellees ever promised to reduce their alleged oral promises to writing. We
hold the trial court did not err in granting appellees' motion for summary judgment on appellant's claim of promissory
estoppel.

 Appellant's fourth and fifth issues are overruled.

J. Appellees' Counterclaims


 In his sixth issue, appellant questions whether appellees are entitled to judgment on their counterclaims for the amounts
due under Notes One, Two, and Three and attorney's fees expended in collection of those amounts. (8)

 In his brief, appellant reasserts the defenses of promissory estoppel and detrimental reliance which we have already
addressed and rejected. He also raises fraud as a defense to appellees' counterclaims.

K. Fraud


 A fraud cause of action requires a material misrepresentation, which was false, and which was either known to be false
when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon,
and caused injury. Formosa Plastics, 960 S.W.2d 41, 47 (Tex. 1998) (citing Sears, Roebuck & Co. v. Meadows, 877
S.W.2d 281, 282 (Tex. 1994)). 

 Appellant pleaded an extremely general allegation of fraud in his First Amended Original Petition:

23. Plaintiff alleges that Defendants made material misrepresentations to him which were false and which were known to
be false when made.



24. Defendants intended that Plaintiff act upon these material misrepresentations, that Plaintiff relied upon the material
misrepresentations and Plaintiff has been caused injury by them.



25. As a proximate cause of the fraud by the Defendants, Plaintiff has suffered actual damages of extreme mental and
emotional distress.



In his response to appellees' motion for summary judgment, appellant characterized his fraud claim as a defense to
appellees' claims of breach of contract as to Notes Two and Three. We hold that, based on the facts adduced under the
standard of review for motions for summary judgment, appellant produced no summary judgment evidence that appellees
made any material misrepresentation to appellant concerning either of the notes. Both notes were signed by appellant with
the knowledge that FmHA approval would have to be secured in order for Note One to be renewed or extended. 
Appellant's sixth issue is overruled.

 We affirm the trial court's order granting appellees' motion for summary judgment.



FEDERICO G. HINOJOSA

Justice




Publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this 

the 1st day of March, 2001.

1. Retired Chief Justice Robert J. Seerden, assigned to this Court by the Chief Justice of the Texas Supreme Court pursuant
to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. When the events underlying this suit occurred, the former Tex. Rev. Civ. Stat. Ann. art. 5069 (Vernon 1987) was in
effect. Effective September 1, 1997, article 5069 was codified in the Texas Finance Code. See Act of May 24, 1997, 75th
Leg., R.S., ch. 1008, § 1, 1997 Tex. Sess. Law Serv. 3435 (Vernon) (current version at Tex. Fin. Code Ann. § 392.001
(Vernon Supp. 2001)). No substantive change in the law was intended by the codification. Tex. Fin. Code Ann. §
1.001(a); Act of May 24, 1997, 75th Leg., R.S., ch. 1008 § 7 & Preamble, 1997 Tex. Sess. Law Serv. 3091, 3603 (Vernon). 

3. See Tex. Bus. & Comm. Code Ann. § 17.41 (Vernon 1987).

4. The record shows that CSB filed an "Emergency Motion for Relief from Stay of Acts Against Property," exactly the type
of motion contemplated by 11 U.S.C.S. §§ 362 (d) and (e) (1995). 

5. "Goods" means tangible chattels or real property purchased or leased for use. Tex. Bus. & Com. Code Ann. §
17.45(1)(Vernon Supp. 2001).

6. "Services" means work, labor, or service purchased or leased for use, including services furnished in connection with the
sale or repair of goods. Tex. Bus. & Com. Code Ann. § 17.45(2)(Vernon Supp. 2001).

7. Effective September 1, 1997, article 5069-11.01 was codified in chapter 392 of the Texas Finance Code. See Act of May
24, 1997, 75th Leg., R.S., ch. 1008, § 1, 1997 Tex. Sess. Law Serv. 3435 (Vernon) (current version at Tex. Fin. Code Ann.
§ 392.001 (Vernon Supp. 2001)). No substantive change in law was intended by the codification. Tex. Fin. Code Ann. §
1.001(a); Act of May 24, 1997, 75th Leg., R.S., ch. 1008 § 7 & Preamble, 1997 Tex. Sess. Law Serv. 3091, 3603 (Vernon). 
Here, we cite to former article 5069-11.01(a), (d) and (e).

8. We note that appellees also counterclaimed for and were granted damages for a bad-faith filing of appellant's DTPA
claims. Because appellant does not raise this issue on appeal, we will not consider it. Tex. R. App. P. 47.1.