# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10533

United States Court of Appeals
Fifth Circuit

**FILED**

March 29, 2016

Lyle W. Cayce
Clerk

KELLY HALL; JOHN CROWDER, JR.,

      Plaintiffs - Appellants

v.

PHENIX INVESTIGATIONS, INCORPORATED; WOOD, THACKER; WEATHERLY, P.C.; R. WILLIAM WOOD; C. JANE THACKER; SAMUEL B. BURKE,

      Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:14-CV-665

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.

PER CURIAM:*

    Kelly Hall and John Crowder, Jr. sued Phenix Investigations, Inc. and the Law Firm Defendants[1] for violations of the Fair Credit Reporting Act (FCRA) and the Fair Debt Collection Practices Act (FDCPA). The complaint

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The Law Firm Defendants are Wood, Thacker & Weatherly, P.C., and Samuel B. Burke, R. William Wood, C. Jane Thacker, who are all attorneys at the firm.

No. 15-10533

alleges that the Law Firm Defendants hired Phenix to gather information about the Plaintiffs' financial assets. As part of that process, Phenix allegedly contacted two banks and impersonated Plaintiffs in order to obtain information about their accounts. The district court dismissed the lawsuit at the pleading stage, finding that Plaintiffs had not sufficiently alleged that Phenix's reports were consumer reports under the FCRA and that the FDCPA did not apply because any debt the Defendants were trying to collect was commercial rather than consumer in nature. For the reasons that follow, we AFFIRM.

## I.

This federal suit was a response to two state lawsuits. In the first, Carroll Family Investments, Ltd, obtained a state court judgment against Texas Wing[2] corporate entities for $869,950. That case involved a commercial lease dispute that arose from the asset sale of multiple Hooter's restaurants.

While the first lawsuit was making its way through the appellate process (it is now final), Carroll filed a second lawsuit against Hall and Crowder, both of whom were Texas Wing investors. Carroll alleged that Hall and Crowder fraudulently transferred money from Texas Wing to their own personal accounts in order to avoid paying the judgment owed from the prior suit. It was in connection with this second lawsuit that the Law Firm Defendants allegedly hired Phenix Investigations to obtain Hall and Crowder's financial information. The Law Firm Defendants then used this information to obtain a temporary restraining order and temporary injunction that prevented Hall and Crowder from disposing of any funds held at certain banks and also required them to each maintain a minimum balance in their accounts. The

---

[2] For simplicity, this Opinion uses Texas Wing to refer jointly to Texas Wing, Inc. and TWI XVIII, Inc., which are related corporate entities. The judgment was issued against both companies.

2

parties ultimately settled the transfer lawsuit.

That brings us to the lawsuit before this court that raises the FCRA and FDCPA claims. The Law Firm Defendants and Phenix each filed Rule 12(b)(6) motions to dismiss. Before the district court ruled on the motions, the Plaintiffs repleaded on their own initiative. The Defendants again filed motions to dismiss. The district court dismissed the claims, but granted Plaintiffs leave to amend. Another round of motions to dismiss followed Plaintiffs' third complaint. The district court found that the pleading defects had still not been cured and dismissed the case.

## II.

We review the Rule 12(b)(6) dismissal *de novo*, viewing well-pleaded factual allegations as true and "in the light most favorable to the plaintiff[s]," making all reasonable inferences in their favor. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). But that standard does not allow a court to accept "conclusory allegations, unwarranted deductions, or legal conclusions." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Among other elements required to state an FCRA claim, Plaintiffs must allege that there was a "consumer report." 15 U.S.C. § 1681b. The statute defines "consumer report" in a way you might expect; it includes information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, and so forth, for the purpose of determining the consumer's eligibility for credit or insurance. But consumer reports may serve additional purposes under the Act, including the purpose Plaintiffs invoke: "collection of an account of[] the consumer." *See* 15 U.S.C. §§ 1681a, 1681b.

The live pleading alleges that Phenix's reports qualify as consumer reports because they are related to debt collection. In support, Plaintiffs point to Phenix's website, which states that it provides "litigation support" services, including "debt collection." Their theory is that because Phenix prepared a

report for litigation support, which according to its own advertising might include debt collection activities, the report qualifies as a consumer report.[3] The problem with this argument is that it assumes that because Phenix's litigation support activities sometimes include potentially qualifying purposes under the Act, that it therefore included a qualifying purpose in Plaintiffs' case. Without any factual connection to collection of a consumer account in their actual case, the Plaintiffs have only made a conclusory allegation.  As the district court explained, it is not reasonable to infer that the report was made for such a purpose because the Plaintiffs conceded in their complaint that the report was commissioned for use in ongoing commercial litigation, which is not a qualifying purpose.  *See Ippolito v. WNS, Inc.*, 864 F.2d 440 445, 450–54 (7th Cir. 1988), *abrogated on other grounds by Safeco Ins. Co. of Amer. v. Burr*, 551 U.S. 47 (2007) (recognizing that use of reports in trademark litigation is a *commercial* purpose and therefore cannot constitute "consumer reports" under the Act); *see also Cavaliere v. Burke*, 50 F.3d 1033, at *3–4 (5th Cir. 1995) (per curiam) (citing *Ippolito* favorably and noting that "not every credit report is a consumer report" under the FCRA).

   *Ippolito* held that reports containing an individual's credit information were not consumer reports when used in a trademark litigation dispute, even though the preparer thought the reports would be used to evaluate prospective franchisees, because both such uses involved commercial, rather than consumer purposes.  864 F.2d at 444–45, 451–54.  Although the underlying lawsuit did not involve a debt, the court's reasoning focused on the commercial purpose of the lawsuit in which the reports were used.  *Id.* at 453–54.  As in *Ippolito*, the purpose of the lawsuit here is commercial in nature because it

---

[3] The second amended complaint concedes that other activities listed under litigation support are not qualifying purposes under the Act.

arose out of a commercial lease dispute. *See id.* at 452 (stating that "reports collected for business, commercial, and professional purposes do not fall under the FCRA" (internal quotations and citations omitted)); *see also Bacharach v. Suntrust Mortg., Inc.*, 2015 WL 6442493, at *3–4 (E.D. La. Oct. 23, 2015) ("[T]he FCRA does not apply where a consumer report is used for business purposes.") (citing cases).

Even assuming that filing a lawsuit to collect on a judgment could constitute the collection of a consumer account within the meaning of the FCRA, there is no collection of a consumer account here because the judgment arose from a commercial transaction. Numerous courts have concluded that the FCRA does not cover reports used or expected to be used only in connection with commercial business transactions. *Bacharach*, 2015 WL 6442493, at *3–4 (surveying cases and concluding that the FCRA does not cover reports created for "business purposes"); *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1081–82 (C.D. Cal. 2014) (the same); *see also Ippolito*, 864 F.2d at 452 (holding that reports used or expected to be used for commercial purposes do not qualify under the FCRA); *Matthews v. Worthen Bank & Trust Co.*, 741 F.2d 217, 219 (8th Cir. 1984) (holding that report's "use[] solely for a commercial transaction" was not a qualifying purpose); *Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114, 1121–27 (D. Nev. 2008) (explaining that information in report collected solely for commercial purposes in connection with plaintiff's business did not qualify as a consumer report); *Lucchesi v. Experian Info. Sols., Inc.*, 226 F.R.D. 172, 173–74 (S.D.N.Y. 2005) (holding that FCRA does not apply to report, even one containing consumer information, where the report was created for use in connection with the plaintiff's business transaction).

Aside from its commercial nature, there is an additional reason why the debt arising out of the first lawsuit was not "an account of[] the *consum*er," 15

U.S.C. § 1681b (emphasis added): it was imposed against corporate entities. As the nature of the state court litigation rejects any conclusory allegation that Phenix was creating a "credit report" for the purpose of collecting on a consumer account, the FCRA claim fails.

The commercial nature of the underlying dispute also dooms Plaintiffs' FDCPA claims even though the two federal statutes have different frameworks and terms. To state an FDCPA claim, Plaintiffs must first allege that they have been the object of collection activity arising from "debt." *See, e.g.*, *Douglas v. Select Portfolio Servicing, Inc.*, 2015 WL 1064623, at *4 (S.D. Tex. Mar. 11, 2015) (setting forth the elements of a FDCPA claim); *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471 (M.D. La. 1995) (the same). The FDCPA defines "debt" as:

> "[A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes*, whether or not such obligation has been reduced to judgment."

15 U.S.C. § 1692a(5) (emphasis added).

Plaintiffs argue that the judgment debt arose from "personal investments made for personal purposes" in Texas Wing, so it qualifies as a "debt" under the Act. Yet any disputed debt that the second state lawsuit sought to collect arose out of the first suit involving the Hooter's lease, which Plaintiffs rightly admit was "commercial in nature." *See First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 134–36 (5th Cir. 1995) (collection efforts related to personal guaranty of business debt are not "debts" within the meaning of the FDCPA because they are not for personal purposes); *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 2016 WL 536864, at *1–2 (2d Cir. Feb. 11, 2016) (holding that debt, even if not actually owed, "stem[ming] from telecommunication services provided by Verizon to [law firm] . . . ar[ose] out of

No. 15-10533

a commercial transaction and [was] not covered by the FDCPA"); *Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006) ("[A]ctions arising out of commercial debts are not covered by the protective provisions of the FDCPA."); *Garza v. Bancorp Grp., Inc.*, 955 F. Supp. 68, 71–72 (S.D. Tex. 1996) (holding that debt from equipment installed at two commercial establishments, even though used to provide security to family members working at the stores, "d[id] not transform the purpose into a noncommercial one" and was therefore not qualifying "debt" under the FDCPA).  Once again the commercial nature of the debt rebuts any conclusory allegation that there was a consumer debt subject to the FDCPA.  And additional support for this conclusion is again found in the fact that the judgment in the first lawsuit was entered against Texas Wing corporate entities.  That means there was no "obligation of a consumer" (15 U.S.C. § 1692a(5)) being collected in the second lawsuit.  The second lawsuit essentially sought to hold the individuals liable for that corporate obligation; it was not seeking to collect a preexisting personal debt.

AFFIRMED.